Dennis TURNER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 29A02–0603–CR–199.

Court of Appeals of Indiana.

March 16, 2007.

---

Andrew M. Barker, Anne E. Brant, Campbell Kyle Proffitt LLP, Noblesville, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Dennis Turner appeals his convictions of burglary as a Class B felony,[1] theft as a Class D felony,[2] and possession of a firearm by a serious violent felon as a Class B felony.[3] Turner argues the trial court abused its discretion by admitting evidence obtained after a pretextual traffic stop. The stop of Turner's vehicle was not rea-

---

**1.** Ind.Code § 35–43–2–1.

**2.** Ind.Code § 35–43–4–2(a).

**3.** Ind.Code § 35–47–4–5(c).

sonable in light of the circumstances and, therefore, violates Article I, Section 11 of the Indiana Constitution.[4] Evidence arising out of the illegal stop, including a videotaped confession, must accordingly be suppressed. We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

During the course of an investigation into a series of break-ins in the Crooked Stick area of Carmel, police came to suspect Turner was responsible and began surveillance of him.

In the early morning hours of February 8, 2005, Detective Scott Jackson saw Turner leave his home. Detective Jackson, who was in an unmarked car, instructed Deputy Alex Petty, who was in uniform and in a marked car, to stop Turner if he observed Turner commit any traffic violations.

Deputy Petty was traveling eastbound on 71 st Street and had stopped for a red light at the intersection of 71 st Street and Guion Road when he saw Turner's vehicle traveling northbound on Guion Road. Deputy Petty watched Turner's vehicle "for probably just under a quarter of a mile." (Tr. at 51.) He testified it took "less than a minute," (*id.* at 57), for the vehicle to travel that distance. Based on his observations, Deputy Petty estimated Turner "was probably going 55," (*id.* at 66), with a margin of error of five miles an hour. Deputy Petty "believe[d]" the speed limit on Guion Road was 45 miles per hour, but did not "know for [sic] exactly." (*Id.* at 65.)

Turner turned right onto 71st Street and Deputy Petty stopped Turner east of the intersection. Deputy Petty told Turner he was being stopped for exceeding the posted speed limit.

Deputy Petty verified the identities of Turner and his passenger, and returned to his vehicle to check Turner's driving status. Deputy Petty informed Detective Jackson that he had stopped Turner. Detective Jackson arrived as Deputy Petty was getting out of his vehicle to complete the traffic stop. No paperwork was generated in connection with the traffic stop and no ticket was issued.

Detective Jackson identified himself as a police officer and told Turner he was free to leave. He then asked Turner if Turner would be willing to speak to him about a series of residential burglaries. Turner agreed. The two sat in the front seat of Detective Jackson's car for ten to fifteen minutes, during which time Turner denied knowledge of the burglaries.

They got out of the car and Detective Jackson then spoke to Turner's passenger. The passenger stated Turner had two guns in their apartment. Detective Jackson told Turner what his passenger had said and asked Turner if he wanted to cooperate now. Turner agreed to cooperate with the investigation and Detective Jackson advised Turner of his *Miranda* rights.

At the Hamilton County Sheriff's Department,[5] Detective Jackson again advised Turner of his *Miranda* rights and then interviewed Turner. During the videotaped interview, Turner admitted to burglarizing some of the residences. Because he had promised not to arrest Turner that evening, Detective Jackson took Turner home after the interview.

---

4. Because we find Turner's challenge under the Indiana Constitution to be dispositive, it is unnecessary for us to address his challenge under the Fourth Amendment.

5. Turner rode to the sheriff's department in the front seat of Detective Jackson's car. Turner's passenger drove Turner's vehicle home.

The State charged Turner with burglary, theft, and possession of a firearm by a serious violent felon.[6] Turner filed a motion to suppress the evidence obtained as a result of the traffic stop. The trial court denied his motion after a hearing.[7] A jury found Turner guilty of all charges, and the trial court sentenced Turner to concurrent terms totaling twelve years.

## DISCUSSION AND DECISION

Turner did not seek interlocutory review of the denial of his motion to suppress but instead appeals following trial. This issue is therefore "appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." *Lundquist v. State,* 834 N.E.2d 1061, 1067 (Ind.Ct.App.2005). Our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pretrial motion to suppress or by trial objection. *Id.* We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.* However, we must also consider the uncontested evidence favorable to the defendant. *Id.*

Article I, Section 11 of the Indiana Constitution provides the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated[.]" The purpose of this section is to protect from unreasonable police activity those areas of life that Hoosiers regard as private. *State v. Quirk,* 842 N.E.2d 334, 339–40 (Ind.2006). "The provision must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure." *Id.* at 340.

Although the language of Article I, Section 11 is identical to the language of the Fourth Amendment of the United States Constitution, we conduct a separate analysis. *Mitchell v. State,* 745 N.E.2d 775, 786 (Ind.2001). In resolving challenges under this section, we consider the circumstances presented in each case to determine "whether the police behavior was reasonable." *Id.* The State has the burden of showing the intrusion was reasonable in light of the totality of the circumstances. *Id.* A police stop and brief detention of a motorist is reasonable and permitted under Section 11 if the officer reasonably suspects that the motorist is engaged in, or about to engage in, illegal activity. *Id.* "Reasonable suspicion exists if the facts known to the officer, together with the reasonable inferences arising therefrom, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur." *Id.* at 786–87. Pretextual stops are not, *per se,* unreasonable under the Indiana Constitution. *Id.* at 787.

Turner argues the State did not meet its burden to show that, under the totality of the circumstances, the stop of his vehicle was reasonable. We agree.

Police officers may stop a vehicle when they observe minor traffic violations. *Jackson v. State,* 785 N.E.2d 615, 619 (Ind.Ct.App.2003), *reh'g denied, trans. denied* 804 N.E.2d 749 (Ind.2003). A stop is lawful if there is an objectively justifiable reason for it, and the stop may be justified on less than probable cause. *Id.* If there is an objectively justifiable reason, then the stop is valid whether or not the police officer would have otherwise made

---

6. One of the items stolen was a blue-steel, snub-nosed .38 caliber handgun.

7. Turner preserved the issue for appeal by properly objecting to the admission of the evidence at trial.

the stop but for ulterior suspicions or motives. *Id.*

Deputy Petty had been trained to estimate vehicle speeds within five miles per hour over or under what radar would detect. Based on his training, he visually estimated Turner's speed on Guion Road at fifty-five miles per hour. Deputy Petty did not "know ... exactly" the posted speed limit but "believe[d]" it was forty-five. (Tr. at 65.) Deputy Petty believed the speed limit on the street was 45 miles per hour, "because Michigan Road, Georgetown Road, Guion Road, all those roads are typically the same. They're basically the same type of a roadway, residential, business. Michigan Road is 45." (*Id.* at 275.)

Although Deputy Petty estimated Turner's speed at 55 miles per hour, he did not know the speed limit in the area when he stopped Turner. Therefore, the stop was not reasonable in light of that and the other circumstances.[8] Detective Jackson testified at trial:

Q. [Y]ou gave Alex Petty who is a[sic] officer with the Hamilton County Sheriff's Department specific instructions to look for a traffic violation, correct?

A. Yes, Sir, that's correct.

Q. And that [sic] real reason why you wanted Mr. Turner stopped wasn't for a traffic violation. It was so you could talk to Mr. Turner, correct?

A. That and identify the other occupant in the vehicle.

Q. So, it was sort of a ruse, this traffic stop for a speeding violation, [be-]cause the true purpose was to get, was to detain Mr. Turner in a way that you couldn't detain him previously, correct?

A. I believe the traffic stop itself was pretextual.

Q. Meaning the traffic stop was a ruse? The police weren't acting appropriately or honestly with the traffic stop because the true purposes of the traffic stop were not effectuated by the stop itself, i.e. to investigate a speeding charge but to interrogate Mr. Turner, correct?

A. No, I think the traffic stop was for an honest traffic violation.

(*Id.* at 215–16.)

Pretextual stops are not, *per se*, unreasonable under the Indiana Constitution. However, this admittedly pretextual stop facilitated by a traffic violation of questionable validity was not reasonable in the light of the circumstances and violated Turner's rights under Article I, Section 11 of the Indiana Constitution.

 Because the traffic stop was illegal under the Indiana Constitution, we must determine what evidence, if any, should be suppressed.

[N]ot all evidence is the fruit of the poisonous tree because it is the result of an illegal search or seizure. Rather, the more apt question in such a case is

---

8. Deputy Petty also observed Turner travel about a quarter of a mile in a little less than a minute. He testified Turner was "slowing down a little bit as he approached the intersection." (Tr. at 273.) Turner's vehicle was the only one in the area. The quarter mile was the last quarter mile before the intersection. Turner asserts "the simple math of Deputy Petty's speed calculation simply does not make sense" (Appellant's Br. at 16) be-

cause the calculation yields a speed of fifteen miles per hour.

The rate of speed (R) is calculated by dividing the distance traveled (D) by the amount of time it takes to travel the distance (T). (R = D / T). Turner's speed in miles per hour could be calculated thus: (0.25 miles / 1 minute) × (60 minutes / 1 hour) = 15 miles per hour.

whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitations of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. Evidence may be purged of the primary taint if the causal connection between the illegal police conduct and the procurement of the evidence is so attenuated as to dissipate the taint of the illegal action.

*Quinn v. State*, 792 N.E.2d 597, 600 (Ind. Ct.App.2003) (internal citations omitted), *trans. denied* 804 N.E.2d 753 (Ind.2003). Three factors for consideration in determining whether the causal chain is sufficiently attenuated are: "(1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." *Id.* (citing *Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)). The important consideration in the third factor is whether the evidence came from " 'the exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Id.* (quoting *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)).

Detective Jackson arrived at the scene before Deputy Petty concluded the illegal traffic stop. With respect to the timing and purpose of his arrival, Detective Jackson testified:

Q And you knew this stop was going to occur because how close were you to the area which he was stopped when you first got wind that Mr. Turner was in the vehicle?

A I was just east of their location, probably, as I recall, probably a quarter of a mile, half a mile, something like that.

Q And were you waiting for a sign from Alex Petty that he had stopped and detained Mr. Turner?

A I was waiting for Deputy Petty to tell me who was inside the, inside the car.

Q Well, i.e., I've stopped this car. I've detained this individual. Mr. Turner is in the car. Come now.

A No, just that he had stopped the vehicle and identified the occupants in the vehicle.

Q And you just happened to be around and were curious to come on by just a couple blocks away, is that right?

A No, as I said it was a pretextual traffic stop.

Q Well the Jury might not know what pretextual means. What does that mean?

A There was, there was a, I wanted to speak with Mr. Turner. And we utilized a traffic stop. In other words, Mr. Turner committed a traffic violation. We had an officer stop him as a means of providing a situation for me to, for me to talk to Mr. Turner.

Q Okay and how soon after you learned that Alex Petty had stopped Mr. Turner were you at the scene?

A I would say probably two to three minutes, maybe.

(Tr. at 217–18.)

Detective Jackson intended to use a traffic stop to "provid[e] a situation" to talk to Turner. (*Id.* at 218.) The encounter between Turner and Detective Jackson began shortly after Deputy Petty stopped Turner. After telling Turner he was free to leave, Detective Jackson asked Turner to speak to him regarding the burglaries and Turner agreed to talk. Given Detective Jackson's intent and the short amount of time that elapsed before the conversa-

tion with Detective Jackson began, we decline to hold Turner's initial agreement was an intervening circumstance sufficient to remove the taint of the illegality of the traffic stop. *See, e.g., Ransom v. State,* 741 N.E.2d 419, 423 (Ind.Ct.App.2000) (requiring break in causal connection between unlawful stop and evidence obtained), *trans. denied* 753 N.E.2d 10 (Ind.2001). We must conclude any evidence gathered at the scene came from the exploitation of the unlawful traffic stop and must be suppressed.

Turner's videotaped statement must also be suppressed. After speaking with Detective Jackson at the scene, Turner agreed to cooperate and talk with Detective Jackson at the sheriff's department. Turner was given *Miranda* warnings but was not handcuffed. Despite the fact Turner's vehicle was at the scene, he rode to the sheriff's department in the front seat of Detective Jackson's vehicle.

Given the near-constant interaction between Turner and police that evening, we cannot say the connection between the illegal traffic stop and Turner's confession had been attenuated sufficiently. *See, e.g., Wong Sun,* 371 U.S. at 491, 83 S.Ct. 407 (where defendant voluntarily returned to police station to make statement several days after being arraigned, connection between improper arrest and statement had "become so attenuated as to dissipate the taint" of illegal arrest). Accordingly, the videotaped statement must be suppressed.

### CONCLUSION

An admittedly pretextual stop facilitated by a traffic violation of questionable validity was not reasonable in the light of the circumstances and violated Turner's rights under Article I, Section 11 of the Indiana Constitution. Evidence obtained as a result of the traffic stop, including a video-taped confession, must be suppressed. Accordingly, we reverse and remand.

Reversed and remanded.

RILEY, J., and BAILEY, J., concur.