Dustin HAYNES, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 27A02–1003–CR–311.

Court of Appeals of Indiana.

Dec. 8, 2010.

Shane Eric Beal, Marion, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Andrew R. Falk, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Dustin Haynes (Haynes), appeals his conviction for operating a motor vehicle while privileges are forfeited for life, a Class C felony, Ind. Code § 9–30–10–17.

We affirm.

### ISSUE

Haynes raises one issue on appeal, which we restate as follows: Whether the trial court abused its discretion in denying Haynes' motion to suppress evidence.

*FACTS AND PROCEDURAL HISTORY*

On February 17, 2009, Kirk McCollum, Chief of Police of the Gas City Police Department (Officer McCollum), patrolled parking lots looking for vehicles illegally parked in handicap parking spots. While patrolling the parking lot near the Good Neighbor Pharmacy in Gas City, Indiana, Officer McCollum noticed a vehicle parked in a handicap spot that did not have a handicap license plate. He looked inside the car to see if the vehicle had a placard hanging from the rearview mirror, but did not see one. The Officer, however, saw a man sitting in the driver's seat and a woman getting into the passenger side front seat. The man in the driver's seat was later identified as Haynes.

Officer McCollum drove past the vehicle to see if a placard was laying on the dash board or some other visible area. By the time Officer McCollum verified that there was no placard visible, he was past the illegally parked vehicle. At that moment, Haynes backed his vehicle out of the parking spot and drove past the Officer. Haynes exited the parking lot and drove west on Fairview Drive. Officer McCollum followed Haynes, activated his emergency lights, and pulled him over.

Officer McCollum approached Haynes' vehicle and asked Haynes whether he had a placard. Haynes responded that he did not. Officer McCollum asked Haynes for his license to verify Haynes' identity in order to write him a ticket for illegally parking in a handicap spot. Haynes responded that his driving privileges had been suspended. Haynes also told the Officer that he was a habitual traffic violator. Officer McCollum ran a check through the Bureau of Motor Vehicles and determined that Haynes indeed was a habitual traffic violator for life. Ultimately, Officer McCollum arrested Haynes.

On February 19, 2009, the State filed an Information charging Haynes with operating a motor vehicle while privileges are forfeited for life, a Class C felony, I.C. § 9–30–10–17. On February 22, 2010, Haynes filed a Motion to Suppress Evidence. On the same day, the trial court denied Haynes' motion, conducted a bench trial, and found Haynes guilty of the charged offense.

On March 15, 2010, the trial court held a sentencing hearing. The trial court found two aggravators: Haynes' criminal record and the fact that Haynes committed the present offense while on probation on other charges. The trial court further found two mitigators: the fact that the offense neither caused nor threatened any serious harm to persons or property and the fact that imprisonment would result in an undue hardship to Haynes' dependents. Weighing aggravators and mitigators, the trial court sentenced Haynes to five years executed at the Department of Correction.

Haynes now appeals. Additional facts will be provided as necessary.

*DISCUSSION AND DECISION*

Haynes argues that the trial court abused its discretion in denying his motion to suppress evidence. Specifically, Haynes contends that Officer McCollum had no reasonable suspicion to stop Haynes because he did not commit any traffic violations. Thus, Officer McCollum had no authority to detain Haynes.

∎ Our standard of appellate review of a trial court's ruling on a motion to suppress is similar to other sufficiency issues. *State v. Quirk*, 842 N.E.2d 334, 340 (Ind. 2006). The record must disclose substantial evidence of probative value that supports the trial court's decision. *Id.* We do not reweigh the evidence, and we consider conflicting evidence most favorably to the trial court's ruling. *Id.*

■ "The Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution protect the privacy and possessory interests of individuals by prohibiting unreasonable searches and seizures." *Coleman v. State,* 847 N.E.2d 259, 262 (Ind.Ct.App.2006), *reh'g denied, trans. denied.* Although the language of Article 1, Section 11 is identical to the language of the Fourth Amendment of the United States Constitution, we conduct a separate analysis. *Turner v. State,* 862 N.E.2d 695, 699 (Ind.Ct.App. 2007). Generally, a lawful search requires a judicially issued search warrant, but where a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *Coleman,* 847 N.E.2d at 262. Under the Fourth Amendment, a police officer may make a brief investigatory stop without a warrant or probable cause if, "based upon specific and articulable facts together with rational inferences from those facts, the official intrusion is reasonably warranted and the officer has a reasonable suspicion that criminal activity 'may be afoot.'" *Moultry v. State,* 808 N.E.2d 168, 170–71 (Ind.Ct.App.2004) (quoting *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

■ Under the Indiana Constitution, we consider the circumstances presented in each case to determine whether the police behavior was reasonable. *Turner,* 862 N.E.2d at 699. The State has the burden of showing the intrusion was reasonable in light of the totality of the circumstances. *Id.* A police stop and brief detention of a motorist is reasonable and permitted under Section 11 if the officer reasonably suspects that the motorist is engaged in, or about to engage in, illegal activity. *Id.* Reasonable suspicion exists if the facts known to the officer, together with the reasonable inferences arising therefrom, would cause an ordinary prudent person to believe that criminal activity has or is about to occur. *Id.* Pretextual stops are not, *per se,* unreasonable under the Indiana Constitution. *Id.*

■ Here, Haynes argues that because Officer McCollum had an opportunity to issue him a parking ticket while Haynes was parked, but did not do so, the Officer lacked any reasonable grounds to stop him later. We disagree.

We find that Officer McCollum had sufficient basis to detain Haynes pursuant to I.C. § 34–28–5–3, which allows a law enforcement officer to detain an individual believed to have committed an infraction. I.C. § 34–28–5–3 further permits a law enforcement officer to ascertain the individual's identity. Because Officer McCollum had probable cause to believe Haynes had committed an infraction, his detention of Haynes was reasonable and did not violate either the state or federal constitutions.

Nevertheless, in support of his argument that the stop was unreasonable, Haynes cites to two rulings from Ohio and Minnesota. In the Ohio case, *State v. Medlar,* 93 Ohio App.3d 483, 638 N.E.2d 1105, 1105–06 (1994), a police officer saw an illegally parked vehicle; however, he did not approach the vehicle to issue a parking ticket, but waited for the driver to show up and give him the ticket personally. When the driver approached his vehicle, the officer flashed a spot light and sounded an air horn. *Id.* at 1106. The driver did not respond, he just sat inside his vehicle and drove off. *Id.* The officer then followed the vehicle, activated his emergency lights, and pulled the vehicle over. *Id.* Because the officer noticed that the driver was intoxicated, he conducted a sobriety test, and arrested the driver for driving under influence of alcohol. *Id.*

The Ohio court of appeals held that, under these circumstances, the stop was illegal. *Id.* at 1110. The court reasoned that the officer's waiting for the driver of an illegally parked vehicle to return to issue a parking violation, permitting the driver to enter his vehicle and drive away, pursuing the driver under the pretext of issuing a parking violation without articulable facts demonstrating that the driver's driving was impaired, administering a sobriety test to the driver without being able to articulate specific facts justifying the stop, administering the sobriety test and then charging the driver with DUI was unreasonable under the totality of the circumstances test and therefore violated both the Fourth Amendment to the United States Constitution and Ohio Constitution. *Id.*

Here, in contrast, although it is true that the reason for the stop was a parking violation, unlike the officer in *Medlar*, Officer McCollum had no opportunity to give Haynes the ticket before the stop. Unlike the officer in *Medlar*, who waited for the driver to show up to personally serve the ticket, and then followed the driver and initiated the stop, here, Officer McCollum did not wait for Haynes. By the time Officer McCollum had realized that Haynes had no handicap permit in his vehicle, Haynes had already pulled out of the handicap spot and driven onto the street. To issue Haynes the ticket, Officer McCollum had to follow him and pull him over on the street. Therefore, we find that *Medlar* is not applicable here because the facts are fairly distinguishable.

Further, Haynes cites to a case from Minnesota, *State v. Holmes*, 569 N.W.2d 181 (Minn.1997). In *Holmes*, a parking monitor ticketed an illegally parked car, ordered a tow, and then feeling intimidated by the driver of the vehicle, called for additional law enforcement support. *Id.* at

182–83. The officer responding to the call arrived at the scene, searched the driver, and found a magazine clip in his pocket. *Id.* at 183. The Minnesota Supreme Court held that the search was unreasonable and therefore unconstitutional because the officer did not stop the driver for the purpose of enforcing the known violation, which was the parking infraction. *Id.* at 185. The court further reasoned "not only do police officers typically enforce parking violations by applying a ticket to the parked car, the facts show that the parking monitor on the scene already had *enforced* the violation by issuing the ticket and ordering the tow." *Id.* (emphasis in the original). The court finally reasoned that

> [a] police officer who has probable cause to believe that a person has committed a parking violation can stop the person *only if the stop is necessary to enforce the violation,* for example, *if a person is attempting to drive off with an illegally parked car before the officer can issue the ticket.*

*Id.* (emphasis added).

Here, applying the *Holmes* analysis, we find that Officer McCollum had probable cause to believe that Haynes had committed a parking violation: the Officer personally saw it. Further, following the *Holmes* analysis, we find that Officer McCollum was allowed to stop Haynes to enforce the violation because Haynes was attempting to drive off with an illegally parked car before the Officer could issue the ticket. Moreover, unlike the officer in *Holmes*, whose search was not done for the purpose of enforcing the parking violation, here, Officer McCollum stopped Haynes solely for the purpose of enforcing the citation. Finally, in *Holmes*, the police already had enforced the parking violation by issuing the ticket and ordering the tow before searching the driver, whereas, in contrast, Officer McCollum here had no opportunity

to enforce the violation prior to making the stop. Officer McCollum was past the vehicle by the time he confirmed his suspicion that Haynes did not have the permit and Haynes already started to pull out of the handicap spot. Therefore, we find that, although the facts of *Holmes* are distinguishable from the present case, the analysis of the law is applicable here.

As such, we find that Officer McCollum had reasonable suspicion to stop Haynes and therefore the stop was legal. The Officer personally observed that Haynes' car was illegally parked in the handicap spot. The car had no handicap license plate and no visible permits inside. By the time the Officer confirmed his suspicion, Haynes backed out of the handicap spot and drove off onto the street. To enforce the parking violation, Officer McCollum followed the driver and stopped him later on the street.

### CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion in denying Haynes' motion to suppress evidence.

Affirmed.

KIRSCH, J., and BAILEY, J., concur.