**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 26 2014, 9:12 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**STEVEN KNECHT**
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CALEB J. BRUBAKER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  08A05-1310-CR-492 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

### APPEAL FROM THE CARROLL SUPERIOR COURT
The Honorable Kurtis G. Fouts, Judge
Cause No. 08D01-1208-CM-222

**March 26, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

When Carroll County uniformed police officers in marked cars responded to a complaint that an individual was walking around and shining flashlights into cars, they encountered appellant-defendant Caleb J. Brubaker. Brubaker ran from the officers and they yelled for him to stop, but he continued running. Brubaker claimed that he did not hear the officers' commands.

We conclude that Brubaker was under a duty to stop running in response to the officers' orders to do so. The evidence was sufficient to support Brubaker's conviction for Resisting Law Enforcement,[1] a class A misdemeanor, and his arguments on appeal amount to impermissible requests to reweigh the evidence. Thus, we affirm the judgment of the trial court.

## FACTS

On July 28, 2012, at approximately 3:00 a.m., the dispatcher at the Flora Police Department (FPD) received a report from a resident at the Flora trailer park that an individual was shining a flashlight into parked vehicles. A short time later, FPD Officer James Bishop arrived in the area accompanied by Reserve Deputy J.D. Cree and two other officers. All of the officers were in full uniform and in marked police cars. The officers parked outside the trailer park, approached the area on foot, and began looking for the subject.

At some point, Deputy Cree noticed a man smoking a cigarette while sitting on the hood of a red vehicle parked in the driveway of one of the mobile homes. Deputy Cree

---

[1] Ind. Code § 35-44.1-3-1(a)(3).

asked the individual for identification, and Brubaker produced an Indiana identification card. Deputy Cree then called police dispatch to verify Brubaker's identity and to check whether there were any outstanding arrest warrants.

As Officer Bishop walked around the trailer where he believed that the initial complaint came from, he saw Deputy Cree speaking with Brubaker. When Officer Bishop began walking to the passenger side of the vehicle, Brubaker turned toward Officer Bishop, grabbed something from the roof of the vehicle, and "bolted." Tr. p. 8, 15. Officer Bishop then yelled, "Stop, police." Id. Brubaker kept running, and one of his shoes eventually fell off. It was subsequently learned that Brubaker ran from the police because he was on probation for burglary and was afraid of what might occur if he was caught.

Brubaker was eventually apprehended and charged with resisting law enforcement, a class A misdemeanor. At a bench trial that commenced on August 7, 2013, Brubaker admitted that he saw both Officers Bishop and Cree in police uniforms, that he "knew they were police officers" and that he "fled from [them]." Tr. p. 21-22. Brubaker was found guilty as charged and was ordered to serve 365 days of incarceration with all but two days suspended to probation. Brubaker now appeals.

## DISCUSSION AND DECISION

As noted above, Brubaker challenges the sufficiency of the evidence, claiming that his conviction must be set aside because he did not hear the police officers order him to

3

stop. Brubaker also contends that he was under no duty to stop because he was engaged in a "consensual encounter" with the officers. Appellant's Br. p. 1.

When addressing a challenge to the sufficiency of the evidence, we do not reweigh evidence or reassess the credibility of witnesses. Walker v State, 998 N.E.2d 724, 726 (Ind. 2013). We view all evidence and reasonable inferences drawn therefrom in a light most favorable to the conviction and will affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. Id.

To prove that Brubaker committed resisting law enforcement, a class A misdemeanor as charged, the State must demonstrate that he "knowingly . . . fled from a law enforcement officer after the officer ha[d], by visible or audible means . . . identified himself . . . and ordered [him] to stop." I.C. § 35-44-3-3(a)(3).

Evidence of a law enforcement officer's order to stop "is based on the circumstances surrounding the incident and whether a reasonable person would have known that he or she had been ordered to stop." Fowler v. State, 878 N.E.2d 889, 894-95 (Ind. Ct. App. 2008). An individual's failure to "remain" after being instructed to do so by law enforcement officials will support a resisting arrest conviction. D.W. v. State, 903 N.E.2d 966, 968 (Ind. Ct. App. 2009). In assessing whether law enforcement officers ordered a subject to stop, this Court considers circumstances such as whether the officers identified themselves and the subject's response to the officers' orders. See Mason v. State, 944 N.E.2d 68, 69-71 (Ind. Ct. App. 2011) (observing that the fact that the

4

defendant's friend had surrendered when police officers identified themselves supported a finding that the defendant knew he had been ordered to stop by the police), trans. denied.

In light of the evidence establishing that Brubaker saw the uniformed police officers, noticed that they were driving marked cars, and fled from them in part because he was on probation for committing another crime, Brubaker's claims are without merit, and amount to a request to reweigh the evidence which we will not do. Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995).

We also note that when Brubaker "bolted" from the officers' presence, he was the subject of a police investigation. Tr. p. 8. As noted above, Deputy Cree was still ascertaining Brubaker's identity and determining whether there were outstanding warrants for his arrest. Id. Then, Officer Bishop explicitly told Brubaker to stop, and Brubaker refused to do so and literally "ran out of his shoes." Id. at 12-13, 15-16.

In construing the resisting law enforcement statute, we have also determined that an individual may not flee from a police officer who has ordered the person to stop, regardless of the apparent or ultimate lawfulness of the officer's order. Cole v. State, 878 N.E.2d 882, 886 (Ind. Ct. App. 2007). In other words, the resisting statute does not condition the offense upon a lawful order. Alspach v. State, 755 N.E.2d 209, 211 (Ind. Ct. App. 2001). As a result, individuals have a duty to stop if ordered to do so by a police officer. Yowler v. State, 894 N.E.2d 1000, 1003 (Ind. Ct. App. 2008). In Cole, this Court explained

5

[A]ny flight from police detention is fraught with the potential for violence because flight will incite a pursuit, which in turn will endanger the suspect, the police, and innocent bystanders. Cases abound in which a suspect's flight from the police set in motion an ensuing chase that resulted in death or serious injury either to a police officer, a suspect, or a bystander. For practical and public-policy-based reasons, constitutional decisionmaking cannot be left to a suspect in the street, even one who has done no wrong; a suspect cannot be the judge of his own cause and take matters into his own hands and resist or take flight. This reasoned approach encourages persons to avail themselves of judicial remedies, and signals that if a person peaceably submits to an unconstitutional stop the result will be suppression of the evidence seized from him.

Id. at 886.

In light of this rationale and the other cases discussed above, Brubaker's reliance on Bovie v. State, 760 N.E.2d 1195 (Ind. Ct. App. 2002), is misplaced. Brubaker cites Bovie for the proposition that "before an individual may actually resist enforcement by fleeing, the individual must have a duty to stop." Id. at 1197. Notwithstanding this observation, the Bovie Court did not have the occasion to (1) construe the plain language of the resisting statute, which contains no requirement that a police officer's request to stop must be legal; or (2) consider whether the defendant has a duty to stop. Moreover, unlike the circumstances in Bovie, where the detective was driving an unmarked police vehicle, the officers in this case were in uniform when Brubaker was ordered to stop.

Here, it is apparent that the police officers were engaged in their duties when they ordered Brubaker to stop. Id. at 8, 15, 21-22. Indeed, it was not Brubaker's choice to evaluate the legality of Officer Bishop's actions before heeding the order to stop. Cole, 878 N.E.2d at 886.

6

Finally, we note that several cases decided after <u>Bovie</u> have directly addressed the provisions of the resisting statute and specifically determined that an individual may not flee from a police officer who has ordered the person to stop, regardless of the apparent or ultimate lawfulness of the order. <u>Dandridge v. State</u>, 810 N.E.2d 746, 749 (Ind. Ct. App. 2004). As was observed in <u>Cole</u>: "the rule in our State is that even if a police officer does not have reasonable suspicion to stop a defendant, the defendant has no right to flee when the officer orders him to stop." 878 N.E.2d at 886. As a result, Brubaker's contentions fail, and we conclude that the evidence was sufficient to support Brubaker's conviction.

The judgment of the trial court is affirmed.

BARNES, J., concurs, and CRONE, J., concurs in result with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

CALEB J. BRUBAKER, )
                                   )
    Appellant-Defendant, )
                                     )
       vs. )     No. 08A05-1310-CR-492
                                       )
STATE OF INDIANA, )
                                     )
    Appellee-Plaintiff. )

**CRONE, Judge, concurring in result**

I agree with the majority that "Brubaker was under a duty to stop running in response to the officers' orders to do so," slip op. at 2, but only because he was already seized pursuant to a lawful investigatory stop when he fled. Therefore, I respectfully concur in result.

In *Gaddie v. State*, 991 N.E.2d 137 (Ind. Ct. App. 2013), *trans. granted*, I agreed with then-Chief Judge Robb and Judge Friedlander that "as long as a seizure has not taken place within the meaning of the Fourth Amendment, a person is free to disregard a police officer's order to stop and cannot be convicted of resisting law enforcement for fleeing." *Id.* at 141. To hold otherwise would "effectively render the consensual

encounter nonexistent in the state of Indiana." *Id.* Our supreme court has granted

transfer and vacated our opinion in *Gaddie*, as well as a similar opinion authored by

Senior Judge Shepard, *Griffin v. State*, 997 N.E.2d 375 (Ind. Ct. App. 2013), *trans.*

*granted* (2014), but I will continue to follow their rationale unless and until our supreme

court dictates otherwise.

> The following principles are relevant here:
>
> Under the Fourth Amendment, a police officer may make a brief investigatory stop without a warrant or probable cause if, based upon specific and articulable facts together with rational inferences from those facts, the official intrusion is reasonably warranted and the officer has a reasonable suspicion that criminal activity may be afoot.

*Haynes v. State*, 937 N.E.2d 1248, 1251 (Ind. Ct. App. 2010) (quotation marks omitted),

*trans. denied* (2011).

> An investigatory stop allows a police officer to temporarily freeze the situation in order to make an investigative inquiry. [Such a] stop is a lesser intrusion on the person than an arrest and may include a request to see identification and inquiry necessary to confirm or dispel the officer's suspicions. Reasonable suspicion entails some minimal level of objective justification for making a stop, something more than an unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause.

*Holbert v. State*, 996 N.E.2d 396, 399-400 (Ind. Ct. App. 2013) (citations and quotation

marks omitted), *trans. denied* (2014). "Reasonable suspicion is determined on a case-by-

case basis by looking at the totality of the circumstances[.]" *Coleman v. State*, 847

N.E.2d 259, 262 (Ind. Ct. App. 2006), *trans. denied*. "[T]he ultimate determination of

9

whether an officer had reasonable suspicion to conduct an investigatory stop is reviewed *de novo.*" *Russell v. State*, 993 N.E.2d 1176, 1179 (Ind. Ct. App. 2013).

The facts most favorable to the trial court's judgment are that police officers in Flora received a report that a man wearing shorts and no shirt was looking through car windows or trailer windows with a flashlight and had "crouched down behind [a] vehicle as to not to be seen" when a paper delivery person went by. Tr. at 14.[2] While investigating the report, Deputy Cree saw Brubaker, who was wearing shorts and a "skin color or a light color tank top" and lying on the hood of a car parked near a trailer. *Id.* at 16. Deputy Cree asked Brubaker what he was doing and whether he lived there. Brubaker responded that he "was just hanging out" and that "yes he lived there." *Id.* at 7. Deputy Cree asked if Brubaker had a flashlight. Brubaker emptied his pockets and "did not present" a flashlight. *Id.* at 12. Deputy Cree asked Brubaker for his identification. Brubaker retrieved his driver's license, which has a Lafayette address, from a wallet inside the trailer. Deputy Cree radioed dispatch to verify if Brubaker "had any warrants or came back, basically to obtain his driving history and any information about, to help me to identify him." *Id.* at 8. Before Deputy Cree received any information, Brubaker

---

[2] Brubaker does not challenge the reliability of the report.

10

saw Officer Bishop approaching and fled.[3]

Based on the totality of the circumstances, I believe that Deputy Cree was justified in detaining Brubaker and ascertaining his identity to confirm or dispel suspicions that he might have been the person seen peering through windows with a flashlight and attempting to avoid detection in the middle of the night, both of which are suggestive of criminal activity.[4] Because Brubaker was lawfully seized pursuant to the Fourth Amendment, he was not free to disregard Officer Bishop's order to stop and thus committed resisting law enforcement by disregarding it.

---

[3] Both the State and the majority assert that Brubaker "grabbed something from the roof of the vehicle" before he fled. *See* Appellee's Br. at 3 (citing Tr. at 8, 15); slip op. at 3 (citing same). This statement comes from the probable cause affidavit. *See* Appellant's App. at 8 ("As Officer Bishop got to the passenger side rear bumper of the vehicle, the male subject turned toward him, grabbed something from the roof of the vehicle and bolted away."). Neither Deputy Cree nor Officer Bishop testified to this at trial.

[4] Brubaker emphasizes that Deputy Cree "described their encounter as consensual." Appellant's Br. at 10, 13. An officer's subjective beliefs are irrelevant in the Fourth Amendment context. *See, e.g.*, *Fentress v. State*, 863 N.E.2d 420, 423 (Ind. Ct. App. 2007) ("A police officer's subjective belief concerning whether he had probable cause to arrest a defendant has no legal effect.").

11