FILED
Jan 24 2018, 5:38 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



| | |
|---|---|
| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
| Chris M. Teagle<br>Muncie, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Ellen H. Meilaender<br>Supervising Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

David Wright,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 24, 2018

Court of Appeals Case No.
05A02-1610-CR-2397

Appeal from the Blackford Circuit
Court.
The Honorable Dean A. Young,
Judge.
Trial Court Cause No.
05C01-1601-F1-36

**Darden, Senior Judge**

# Statement of the Case

David Wright appeals his convictions of four counts of child molestation committed by a person at least twenty-one years of age, all Level 1 felonies.[1] Concluding that the trial court erred in admitting evidence, we reverse and remand.

# Issue

Wright raises three issues, one of which is dispositive: Whether the trial court committed error in admitting into evidence at trial Wright's incriminating statements to police officers.

# Facts and Procedural History

Wright lived with a married couple, T.S. and E.S., and their five children, in Hartford City, Indiana. They shared a large apartment that was part of an older house on East Water Street that had been subdivided into separate apartments. The property owner lived in an upstairs apartment, which had an address of 220 and a half East Water Street. T.S. and E.S., and their children, lived on the main floor of the house, with Wright living in the basement, in an apartment with the address of 220 East Water Street.

---

[1] Ind. Code § 35-42-4-3 (2015).

[4] On Friday, January 22, 2016, Special Agent Jeffrey Robertson of the Federal Bureau of Investigation arrived at the house with several other armed federal and state law enforcement officers. He had a federally-issued warrant from Washington, D.C., to search for child pornography on computers at 220 and a half East Water Street in Hartford City, Indiana. The resident of that apartment paid for internet service for both apartments. Robertson only learned upon arriving at the house that it had been subdivided into apartments. At that point, he decided to improvise rather than seek a second warrant for the address of 220 East Water Street.

[5] When Robertson and other agents entered T.S. and E.S.'s apartment at 220 East Water Street, he gathered everyone together, including Wright, explained that he was there to investigate an allegation of child pornography, and stated that he wanted to scan their electronic devices for child pornography.

[6] Robertson failed to advise the residents of the apartment that they did not have to give their consent. Further, he had written consent forms in his vehicle but, for reasons unknown, he did not use them. Instead, Robertson told them that they had two options: he could freeze the scene by removing the residents from their home (on a cold winter day) while he sought out a prosecutor for a second search warrant for their home and computers (without setting/establishing a reasonable time line as to when they could expect to be able to return home); or he could take the equipment and quickly return it as soon as possible. Wright and the others turned over their computers.

[7] Robertson took the computers to a separate location, where he used a scanning program called OS Triage to detect whether the computers had been used to search for and download child pornography. Specifically, the program scans all images on a computer for digital markers, or hashtags, that indicate whether an image contains child pornography. The OS Triage program merely indicated that at least one image containing child pornography was present on one of Wright's computers. Robertson did not view any images or files on the computers or subject them to further forensic analysis.

[8] Approximately three days later, on Monday, January 25, 2016, Robertson went back to the apartment. He returned all computers in the presence of everyone, with the exception of Wright's two computers. When Wright inquired about his computers, Robertson stated he would like to discuss the matter with him and asked him if he wanted to talk there or in a different location. Wright agreed to talk outside. It was a very cold day, and the parties proceeded to Robertson's vehicle, where it was warm inside.

[9] As they were walking to the vehicle, Robertson informed Wright he was neither in custody nor under arrest. Robertson further stated to Wright that he was not obligated to talk with him and was free to leave at any time. Upon getting into the vehicle, Robertson sat in the driver's seat, Wright sat in the front passenger seat, and another officer sat in the back seat. Again, Robertson informed Wright that the car's doors were unlocked and reminded him that he was free to leave at any time. Wright stated he understood; however, Roberson did not *Mirandize* Wright.

[10] During their discussion, Robertson stated that he had discovered that one of Wright's computers had been used to access child pornography websites through a router that facilitated anonymous transactions. He further explained that per his standard procedure, he would customarily conduct a forensic interview with children found in a location where child pornography had been discovered to ensure that no inappropriate behavior had occurred. As of that date, Wright's computers had not been forensically searched to verify OS Triage's preliminary results. Robertson then asked Wright if he had any information about contact with any of the children. At that point, Wright stated he had had some kind of contact with two of T.S. and E.S.'s children. Robertson immediately stopped the conversation and contacted the Hartford City Police Department. He ultimately spoke with Lieutenant Detective Cody Crouse. Robertson took Wright into custody at Crouse's request, handcuffed him, and transported him to the police station. Robertson did not question Wright any further during the drive to the police station.

[11] Crouse met them at the police station. Robertson put Wright in an interview room and removed his handcuffs. Next, Robertson spoke with Crouse outside of Wright's presence, explaining his investigation and what Wright had disclosed to him. Crouse then interviewed Wright in Robertson's presence. Prior to the start of the interview, Crouse *Mirandized* Wright using an advice of rights form, which Wright signed.

[12] During the interview, which was recorded, Wright told Crouse and Robertson that within the past year, he had performed numerous sexual acts with W.S.,

who was now ten years old; and, some sexual acts with F.S., who was now four years old, within the past six months. Wright also told the officers that W.S. had observed several of the acts of molestation committed on F.S. by Wright. He admitted that he had recorded several sex acts with each of the children and saved the recordings on his computer. Wright further stated he had told W.S. not to tell anyone about the molestations, explaining to W.S. that if he told anyone, then Wright would go to prison for the rest of his life.

[13] The State charged Wright with four counts of child molestation, all as Level 1 felonies. Counts I and II pertained to Wright's molestations of W.S. and Counts III and IV pertained to Wright's molestations of F.S.

[14] Subsequently, Wright filed a motion to suppress his statements, asking the court to deem inadmissible all evidence obtained from the January 22, 2016 search of the apartment, including the contents of his computers. Wright further argued his January 25, 2016 statements to Robertson and Crouse, and any evidence obtained as a result of those statements, should also be suppressed because they were derived from the illegal search and seizure that had taken place on January 22, 2016. The State filed a response in opposition to Wright's motion, and the court held an evidentiary hearing, during which Agent Robertson testified as to his January 25, 2016 questioning of Wright.

[15] Later, the trial court issued an order granting Wright's motion in part and denying it in part, ruling as follows: "Comes now the Court and grants defendant's Motion to Suppress all evidence obtained as a result of a search of

the defendant's premises on January 22, 2016, and denies the defendant's request to suppress statements against interest made on January 25, 2016." Appellant's App. Vol. 2, p. 46. The trial court determined that the search of Wright's computers violated both his federal and state constitutionally protected rights against unreasonable search and seizure. Apparently, the trial court found that the warrant was defective as applied to Wright, and Wright's consent to the search was coerced and therefore found to be invalid. The trial court further determined, however, that on January 25, 2016, Wright's statements to the police were obtained independently of the search of the computers and, therefore, were admissible into evidence.

[16] Wright waived his right to a jury trial and the case was tried to the bench. Both parties moved the court to take judicial notice of the evidence that was admitted at the hearing on the motion to suppress. The court granted their joint motion. In addition, the recorded police interview was admitted into evidence over Wright's objection. Further, W.S. testified and described to the trial court the acts of molestation Wright had committed against him and his sister F.S.

[17] The trial court found Wright guilty as charged and imposed a sentence. This appeal followed.

## Discussion and Decision

[18] Wright argues the trial court erred by denying his motion to suppress all of the evidence in its entirety, including his January 25, 2016 statements to police and all subsequently-derived evidence presented at trial. Because he appeals after a

completed trial, the issue is more properly framed as whether the trial court erred in admitting the statements into evidence at trial. *Atkinson v. State*, 992 N.E.2d 899, 901 (Ind. Ct. App. 2013), *trans. denied*. In general, we review a trial court's decision on evidentiary issues for an abuse of discretion. *Id.* We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Jackson v. State*, 996 N.E.2d 378, 382-83 (Ind. Ct. App. 2013), *trans. denied*.

[19] Wright further argues the admission of his statements to Robertson and Crouse violated his rights pursuant to the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution because they were obtained through the unconstitutional and illegal search and seizure of his computers. He provides arguments and authority only as to the Indiana Constitution, so we deem the Fourth Amendment claim under the United States Constitution to be waived. *See Russell v. State*, 993 N.E.2d 1176, 1179 (Ind. Ct. App. 2013) (failure to provide separate analysis for each constitutional claim results in waiver).

[20] Article 1, Section 11 of the Indiana Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

[21] The language of Section 11 tracks the Fourth Amendment of the United States Constitution verbatim, but we analyze claims under Section 11 according to a different standard:  that is, whether the actions of the government were reasonable under the totality of the circumstances.  *Shotts v. State*, 925 N.E.2d 719, 726 (Ind. 2010) (quotation omitted).  In some circumstances, Section 11 confers greater protections to individual rights than the Fourth Amendment.  *Id.*

[22] The trial court determined that the federal authorities' search and seizure of Wright's computers violated Section 11, and the State does not dispute that conclusion.  The State instead argues that Wright's statements to Agent Robertson and Lieutenant Crouse are nonetheless admissible because the statements "were sufficiently attenuated from the illegal seizure" of Wright's computers.  Appellee's Br. p. 11.

[23] In Fourth Amendment jurisprudence, the exclusionary rule bars evidence directly obtained by an illegal search or seizure as well as evidence derivatively gained as a result of information learned or leads obtained during that same search or seizure.  *Clark v. State*, 994 N.E.2d 252, 266 (Ind. 2013).  The derivative evidence is known as the "fruit of the poisonous tree."  *Id.*  Indiana courts have applied the fruit of the poisonous tree doctrine to search and seizure claims under Article I, section 11 of the Indiana Constitution.  *See Gyamfi v. State*, 15 N.E.3d 1131, 1136 (Ind. Ct. App. 2014).

[24] Under federal jurisprudence, if the defendant proves the evidence was derived from an unconstitutional search, then the State can claim that the evidence may

nonetheless be admitted based on an exception to the fruit of the poisonous tree doctrine. *Id.* Established federal exceptions include: (1) proving the derivative evidence has an independent source or basis; (2) proving the connection between the unconstitutional conduct and the discovery of the derivative evidence was so attenuated as to dissipate any taint; and (3) proving the derivative evidence would have inevitably been properly obtained. *See Herald v. State*, 511 N.E.2d 5, 8 (Ind. Ct. App. 1987) (quotations omitted), *trans. denied*.

[25] Indiana's constitutional jurisprudence diverges from federal jurisprudence as to exceptions to the fruit of the poisonous tree doctrine. No Indiana appellate court has determined that the attenuation doctrine and/or exception applies to claims presented under Article 1, section 11 of the Indiana Constitution. Indeed, the Court has held to the contrary. *See Trotter v. State*, 933 N.E.2d 572, 582-83 (Ind. Ct. App. 2010) (attenuation doctrine inapplicable under Indiana Constitution); *see also Gyamfi*, 15 N.E.3d at 1138 (no inevitable discovery exception); *Ammons v. State*, 770 N.E.2d 927, 935 (Ind. Ct. App. 2002)*, trans. denied* (same); *cf. State v. Foster,* 950 N.E.2d 760, 763 (Ind. Ct. App. 2011) (considering the attenuation doctrine in the context of a search and seizure claim under the Indiana Constitution and concluding it did not apply to the facts of that case), *trans. denied*; *Webster v. State*, 908 N.E.2d 289, 293 (Ind. Ct. App. 2009) (same), *trans. denied*; *Turner v. State*, 862 N.E.2d 695, 701 (Ind. Ct. App. 2007) (same).

[26] In the current case, there is no dispute that Wright's incriminating statements to the officers on January 25, 2016, about touching the children directly resulted

from or derived from the unconstitutional search and seizure of Wright's computers. The statements were thus the fruit of the poisonous tree. Having determined pursuant to the holding in *Trotter* that the attenuation doctrine does not apply to search and seizure claims under the Indiana Constitution, we must reject the State's argument that Wright's statements made during police questioning in Robertson's vehicle and at the police station were admissible. We conclude the trial court erred in admitting Wright's incriminating statements into evidence. As a result, we reverse his convictions and remand for further proceedings not inconsistent with this opinion. Both parties challenge the appropriateness of Wright's sentence, but it is unnecessary for us to address that issue. In addition, we express no opinion on the admissibility of W.S.'s testimony because that issue is not before us.

## Conclusion

[27] For the reasons stated above, we reverse the judgment of the trial court and remand for further proceedings not inconsistent with this opinion.

[28] Reversed and Remanded.

Riley, J., and Mathias, J., concur.