Jimmie D. BURKES, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 48A02–0507–CR–608.

Court of Appeals of Indiana.

Feb. 15, 2006.

Transfer Denied April 27, 2006.

---

4. *See* IC 35–48–4–6.

David W. Stone, IV, Anderson, for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

Following a jury trial, Appellant, Jimmie D. Burkes, was convicted of one count of

Dealing in Cocaine as a Class B felony,[1] one count of Possession of a Controlled Substance as a Class D felony,[2] one count of Possession of Marijuana as a Class A misdemeanor,[3] and one count of Carrying a Handgun Without a License as a Class A misdemeanor.[4] Upon appeal, Burkes claims that the trial court erred in admitting evidence which he claims was obtained through an investigatory stop which was not supported by reasonable suspicion.

We affirm.

The record reveals that on the night of October 15, 2004, Kevin Early, a detective with the Anderson Police Department assigned to the Madison County Drug Task Force, received a tip from an unknown person who informed him that there was a black male with braided hair wearing glasses and an all-black outfit who was at the home of Angela Williams. The anonymous tipster told Detective Early that the man at Williams's house was in possession of a handgun and marijuana and was also selling cocaine. Detective Early informed his partner, Detective Stephon Blackwell, also assigned to the Madison County Drug Task Force, about the tip. Both detectives were familiar with Williams, knowing her to be a crack cocaine user and addict. Detective Early was aware that Williams had an outstanding warrant for her arrest, which fact he confirmed with the police dispatch.[5] Detectives Early and Blackwell decided to go to Williams's house to arrest her and further investigate the tip.

The detectives parked behind the house and approached the house from the east side. As they went up onto the front porch of the house, they saw through a window Williams and a man, later identified as Burkes, matching the description given by the tipster. Because of the tip that the man at Williams's house had a handgun, the detectives did not immediately attempt to enter the house but instead went to the back of the house and called uniformed officers to the scene for backup. When the backup officers arrived about ten minutes later, the police went back onto the porch and heard voices coming from inside the house. The police forced their way through the door to discover no one inside but a television set left on. Detective Early told the uniformed officers to leave while he and Detective Blackwell tried to fix the doorjamb which was apparently damaged by their forced entry into the house.

While attempting to fix the doorjamb, the detectives heard someone putting a key in the door lock.[6] Detective Blackwell opened the door, and standing just outside on the front porch were Williams, Burkes, and another individual later identified as Andrew Edwards. Detectives Blackwell and Early, although not wearing police uniforms, did have police badges hanging around their necks. According to Williams, the detectives, with their weapons drawn, stated, "freeze, narcotics unit." Tr. at 248. Burkes, who was standing behind Williams, turned and began to run

1. Ind.Code § 35–48–4–1(a) (Burns Code Ed. Repl.2004).

2. Ind.Code § 35–48–4–7(a) (Burns Code Ed. Repl.2004).

3. Ind.Code § 35–48–4–11 (Burns Code Ed. Repl.2004).

4. Ind.Code §§ 35–47–2–1, 35–47–2–23(c) (Burns Code Ed. Repl.2004).

5. The warrant was for a probation violation which resulted from Williams's using cocaine.

6. Williams testified that she was absent from her house for only seven to ten minutes. Thus, the police did not tarry long in the house.

away. Detective Blackwell chased Burkes down and tackled him before he could leave the porch. Detective Blackwell asked Burkes why he had run away, and Burkes responded by saying that he had "a little weed on him." Tr. at 49, 153. As Detective Blackwell began to perform a pat-down on Burkes, Burkes informed him that he was also in possession of a handgun. Detective Blackwell then handcuffed Burkes and retrieved a .22 caliber handgun and a black film canister from Burkes's pocket. When Detective Blackwell looked inside the canister, he found a substance which later tested to be marijuana and pills which later proved to be alprazolam, i.e. Xanax.

While awaiting for uniformed officers to arrive to transport Burkes and Williams, who was arrested pursuant to the outstanding warrant, Williams told Detective Early that Burkes had cocaine inside the seam of the zipper and waistband of his pants. The detectives then searched Burkes more thoroughly and found in Burkes's pants a substance, which later tested as cocaine, in a plastic bag. Also found in Burkes's pants was a digital scale.

On October 21, 2004, the State charged Burkes as follows: Count I, dealing in cocaine as a Class B felony; Count II, possession of marijuana as a Class A misdemeanor; Count III, possession of a controlled substance as a Class D felony; and Count IV, carrying a handgun without a license as a Class C felony. On January 10, 2005, Burkes filed a motion to suppress the evidence seized from his person, and the trial court held a hearing on the motion on January 12, 2005. The trial court denied the motion at the end of the hearing. A jury trial was held on January 13 and 14, 2005. At trial, Burkes objected to the admission of the evidence seized from his person.

At the conclusion of the trial, the jury found Burkes guilty as charged as to Counts I, II, and III, but guilty as a Class A misdemeanor as to Count IV. On February 2, 2005, the trial court held a sentencing hearing and imposed the following sentences: upon Count I, twenty years; upon Count II, one year; on Count III, three years; and upon Count IV, one year. All the sentences were to run concurrently, for an aggregate sentence of twenty years. Burkes filed a notice of appeal on March 4, 2005.

■ Our standard of review of rulings on the admissibility of evidence is effectively the same whether the challenge is made by a pre-trial motion to suppress or by a trial objection. *Ackerman v. State,* 774 N.E.2d 970, 974 (Ind.Ct.App.2002), *trans. denied.* We look for substantial evidence of probative value to support the trial court's decision. *Swanson v. State,* 730 N.E.2d 205, 209 (Ind.Ct.App.2000), *trans. denied.* We consider the evidence most favorable to the court's decision and any uncontradicted evidence to the contrary. *Id. See also Kelley v. State,* 825 N.E.2d 420, 426 (Ind.Ct.App.2005) (when ruling upon the admissibility of evidence at trial, the court should consider evidence from a motion to suppress hearing which is favorable to the defendant and which has not been countered or contradicted by foundational evidence offered at trial).

■ The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *Francis v. State,* 764 N.E.2d 641, 644 (Ind.Ct. App.2002). Police officers, however, may briefly detain a person for investigatory purposes if they have a reasonable suspicion that criminal activity may be afoot. *Id.* (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Reasonable suspicion exists where the facts known to the officer at the moment of the

stop, together with the reasonable inferences arising therefrom, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. *Id.* In deciding whether there was reasonable suspicion for a stop, we look to the totality of the circumstances of a given case. *Id.* The reasonable suspicion inquiry is fact sensitive and is thus determined on a case-by-case basis. *Id.* We review a trial court's determination regarding reasonable suspicion de novo. *Id.*

■ Upon appeal, Burkes claims that the anonymous tip was insufficient to establish reasonable suspicion justifying an investigatory stop. We agree that an anonymous tip, standing alone, is insufficient to establish reasonable suspicion. As explained in *Wells v. State,* 772 N.E.2d 487, 490 (Ind.Ct.App.2002):

> "The United States Supreme Court has held that an anonymous tip is not enough to support the reasonable suspicion necessary for a 'Terry' stop. *Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). An anonymous tip is considered less reliable than a tip from a known informant. *Id.* Anonymous tips must be accompanied by specific indicia of reliability or must be corroborated by a police officer's own observation in order to pass constitutional muster. *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Reasonable suspicion may be established by the totality of circumstances. *Id.* Thus, although an anonymous tip alone will be insufficient to establish reasonable suspicion, where significant aspects of the tip are corroborated by the observations of police, a subsequent investigatory stop is likely valid. *Id.*"

■ In the present case, the anonymous tipster informed Detective Early that a black male with braided hair, wearing glasses and an all-black outfit, was at the home of Angela Williams, a known cocaine user, and was in possession of a handgun and marijuana and selling cocaine. From the porch of Williams's house the detectives saw through a window a black male with braided hair, wearing an all-black outfit and glasses. Thus, while this corroborated the tip in certain respects, the information corroborated was easily obtained by standing on Williams's porch and looking through the window. This corroboration consists of easily obtained facts and conditions, none of which predicted future behavior. In other words, the detectives corroborated only "innocent" portions of the tip. The corroborated information did not show that criminal activity had or was about to occur. *See Washington v. State,* 740 N.E.2d 1241, 1246 (Ind.Ct.App.2000) (stating that federal precedent requires that a tipster be able to predict future behavior, validating the tipster's knowledge as reliable in its assertion of illegality), *trans. denied.* Thus, at the time the officers observed Burkes through the window of Williams's home, they had no reasonable suspicion to support an investigatory stop of Burkes. But this is not the end of the story.

■ Williams had an outstanding warrant for her arrest. The detectives were justified in entering Williams's house in order to execute this warrant because they had recently seen her inside. An arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within. *Payton v. New York,* 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *State v. Estep,* 753 N.E.2d 22, 26 (Ind.Ct.App.2001). Upon entering Williams's home, the police discovered that she and Burkes had left. While attempting to fix the doorjamb so that the door

would once again close, Burkes and Williams with Edwards returned. The detectives then opened the door, saw the three individuals, and ordered them to "freeze." When the officers saw Williams standing just outside her door on the front porch, they had every right to stop and arrest her because she had an outstanding warrant for her arrest, but the question before us is whether the police had reasonable suspicion to perform an investigatory stop of Burkes.

A similar situation was before the court in *United States v. Silva*, 957 F.2d 157 (5th Cir.1992), *cert. denied*, 506 U.S. 887, 113 S.Ct. 250, 121 L.Ed.2d 182. In that case, the police went to the home of Debra Campbell to execute an arrest warrant on her. As the police approached, a truck driven by Campbell with Silva as a passenger was attempting to leave the driveway. The police blocked the driveway, preventing the truck from leaving, and Silva exited the car and began to walk away. When a police officer ordered Silva to halt, Silva broke into a run. The officer chased after Silva, who fell down. The officer was unable to grab Silva but did touch him before he too fell down. Silva got up and ran away again, throwing a loaded handgun to the ground as he ran. Silva was caught by another officer seconds later. Upon appeal, Silva claimed that he had been unlawfully seized and the handgun should have been suppressed.

The Fifth Circuit Court of Appeals held that the officer's command to halt did not "seize" Silva for Fourth Amendment purposes. *Id.* at 159 (citing *California v. Hodari D.*, 499 U.S. 621, 629, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (holding that a defendant was not seized until the police tackled him, thereby effecting a seizure by physical force)). The *Silva* court stated

that even if the officer's touching of Silva constituted a seizure, such was supported by reasonable suspicion. *Id.* The *Silva* court recognized that while flight alone was insufficient, flight does supply an element of the "reasonable suspicion calculus." *Id.* at 160; *see also Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (holding that unprovoked, headlong flight from the police can support a finding of reasonable suspicion). The *Silva* court also recognized that companionship with or proximity to an arrestee does not alone provide probable cause, but stated that companionship with an arrestee is relevant to the determination of probable cause or reasonable suspicion. 957 F.2d at 160. The court therefore concluded that:

> "the facts reveal that Silva was discovered in the company of a suspected felon. He subsequently fled from uniformed police officers who had ordered him to halt. We find, based on these facts, that any seizure of Silva that may have occurred was supported by reasonable suspicion. The evidence disclosed during the subsequent pursuit was, therefore, not tainted by unlawfulness...." *Id.* at 161.

■ In the present case, the detectives were inside the house of a known drug user and addict when that user, who had an outstanding warrant for her arrest, appeared at the front door with two other men, one of whom matched the description of an alleged drug dealer.[7] Ordering Burkes and Edwards to freeze was a reasonable action to temporarily preserve the status quo—allowing the detectives a safe means of arresting Williams. *See Tawdul v. State*, 720 N.E.2d 1211, 1216–17 (Ind.Ct. App.1999) (holding that police have a limit-

---

**7.** We emphasize that the information from the anonymous tipster was not enough, standing alone, to support a reasonable suspicion justifying an investigatory search of Burkes.

ed right to briefly detain a passenger who exits a vehicle after it has been lawfully stopped at least long enough for the police to make an initial assessment of the situation), *trans. denied; Walls v. State,* 714 N.E.2d 1266, 1269 (Ind.Ct.App.1999) (Sullivan, J., dissenting), *trans. denied.* Moreover, the order to freeze was not itself a "seizure" for purposes of the Fourth Amendment. *See Silva,* 957 F.2d at 159; *Hodari,* 499 U.S. at 629, 111 S.Ct. 1547; *see also Murphy v. State,* 747 N.E.2d 557, 559 (Ind.2001) (citing *Hodari* for proposition that seizure does not occur when the suspect fails to yield to law enforcement authority); *Baker v. State,* 573 N.E.2d 475, 477 (Ind.Ct.App.1991) (a seizure does not occur if the subject does not yield to a show of authority or an application of physical force).

When the detectives gave the order to freeze, Burkes began to run away.[8] Just as in *Silva,* we think these facts support a reasonable suspicion supporting an investigatory stop.[9] Burkes does not directly challenge the propriety of the police questioning him after his apprehension. In response to these questions, Burkes admitted that he was in possession of marijuana and a handgun. From that point, the detectives had probable cause to arrest Burkes, and the subsequent search of Burkes was incident to this lawful arrest. *See Gibson v. State,* 733 N.E.2d 945, 953 (Ind.Ct.App.2000) (noting rule that incident to lawful arrest, an arresting officer may conduct a warrantless search of the arrestee's person and the area within his or her immediate control).

In conclusion, the anonymous tip by itself was insufficient to support a finding of reasonable suspicion justifying an investigatory search of Burkes. However, combined with the fact that he was in the immediate vicinity of Williams, who had an outstanding warrant for her arrest, and that Burkes fled the detectives' order to freeze, the facts known to the detectives at that time gave rise to a reasonable suspicion that Burkes was engaged or about to engage in criminal activity, and Detective Blackwell was justified in apprehending Burkes. After being detained, Burkes admitted to possessing marijuana and a handgun, thus justifying a further search of his person incident to his lawful arrest. For these reasons, we cannot say that the trial court erred in admitting the evidence seized from Burkes's person.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and VAIDIK, J., concur.

---

8. Burkes's claim that he did not run or attempt to run, but instead was simply moving out of the way when guns were pointed at him, is an invitation to reweigh evidence and view conflicting evidence in a light favorable to him. This we will not do. *See Swanson,* 730 N.E.2d at 209. The trial court was within its discretion to believe the testimony of Williams and the detectives and disbelieve Burkes's testimony.

9. There is no indication that the detectives intentionally tried to make Burkes flee.