Jeffrey **BUCKLEY**, Appellant–
Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0708–CR–731.

Court of Appeals of Indiana.

May 1, 2008.

John Pinnow, Greenwood, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jessica A. Meek, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Jeffrey Buckley appeals his conviction of Carrying a Handgun Without a License,[1] as a class C felony. The sole issue presented on appeal is whether the trial court abused its discretion in admitting evidence of the handgun, which Buckley claims was discovered as a result of an unconstitutional seizure.

We reverse and remand.

On the evening of August 5, 2006, a shooting occurred at 56th and Georgetown Road in Indianapolis. Three men were shot, one of whom, Justin Miller, died as a result of a gunshot wound to the head. Witnesses described the shooter as a tall, thin, dark-skinned black male, driving a red Ford Explorer or Expedition with gray or dark bumpers. Immediately after the shooting, the shooter drove to a nearby housing addition, stopped at a retention pond, and then exited back onto 56th Street.

Detective Bill Rogers led the homicide investigation. He learned from one of Miller's roommates that Miller had recently been approached at the mall by a black male who stated, "my name is 'Jeff Buckley, just remember me'" and then abruptly walked away. *Exhibits* at 57. Another one of Miller's roommates, Spencer Chasteen, indicated that he (Chasteen) had been approached on an earlier occasion at the mall by a dark-skinned black male, who introduced himself as Jeff Buckley. Before walking away, the man said to Chasteen, "I know all about you, you took my stuff." *Id.* at 58. It was believed that these comments stemmed from the fact Chasteen was a suspect in a recent vehicle theft and credit card fraud case in which

---

1. Ind.Code Ann. § 35–47–2–1 (West, PREM-ISE through 2007 1st Regular Sess.).

Buckley's live-in girlfriend was the victim. Upon further investigation, Detective Rogers learned that Buckley lived near the scene of the shooting and owned a 2003 red Ford Expedition. Thus, late on the night after the shooting, Buckley had become a person of interest in the investigation.

On the morning of August 7, Detective Rogers assigned a covert operations team to locate Buckley and watch his residence. In the meantime, around 8:00 a.m., Rogers began working on drafting a probable cause affidavit and search warrants for Buckley's residence, clothing, and vehicle.

Officer Hal Grunden maintained surveillance of Buckley's residence, which had Buckley's red Ford Expedition parked in the driveway. Just after 9:00 a.m., Officer Grunden observed a man fitting Buckley's description drive away in Buckley's vehicle. Officer Grunden followed in his undercover police vehicle and observed the driver commit a few traffic violations. He radioed for a marked car to stop the vehicle. Officer Grunden notified Detective Rogers of the stop and was instructed to detain Buckley until detectives arrived at the scene.

At the scene of the stop, officers verified that Buckley was the driver of the vehicle. Buckley was informed that he had been stopped for certain traffic violations and that a detective was en route to speak with him. While he was not under arrest, Buckley was not free to leave and "would have been in jail with handcuffs" if he had attempted to drive away. *Transcript* at 495. Detectives Breedlove and Buckner arrived at the scene ten to fifteen minutes after the stop. The detectives directed Buckley to exit his vehicle and then proceeded to pat him down. At some point, Buckley was handcuffed and taken to an interview room at the robbery-homicide office. His vehicle was towed from the scene to a secure facility where it would be searched once a search warrant was obtained.

Buckley was detained by police for several hours while Detective Rogers continued working on obtaining search warrants. Although Buckley was not handcuffed while waiting in the interview room, he was never told that he was free to leave. The search warrants were finally signed by a judge at 12:48 p.m. Detective Rogers attempted to interview Buckley around 3:00 p.m., but Buckley requested an attorney. Detective Rogers obtained the clothes Buckley was wearing and then went to observe while a crime-lab officer searched Buckley's vehicle pursuant to the warrant. A loaded handgun (unrelated to the murder) was recovered from the center console next to the driver's seat. Immediately thereafter, Buckley was arrested on the instant firearms charge.

Before and during his jury trial, Buckley sought to suppress evidence of the handgun. He claimed the handgun was discovered as the result of an unconstitutional seizure under both article 1, section 11 of the Indiana Constitution and the Fourth Amendment to the Constitution of the United States. The trial court admitted the evidence over Buckley's objection, and Buckley was convicted as charged. Buckley now appeals.

■ We initially observe that the standard used to review rulings on the admissibility of evidence is effectively the same whether the challenge is made by a pretrial motion to suppress or by a trial objection. *Burkes v. State*, 842 N.E.2d 426 (Ind.Ct.App.2006), *trans. denied*. We will not reweigh the evidence, and we consider the conflicting evidence most favorable to the trial court's ruling. *Id.* We will, however, also consider any uncontradicted evidence to the contrary. *Id.* We will affirm

the decision if it is supported by substantial evidence of probative value. *Id.*

Buckley argues that the trial court abused its discretion by admitting evidence of the handgun because it was discovered following an unconstitutional seizure. Specifically, Buckley contends that the warrantless seizure of his person and vehicle violated the Fourth Amendment to the United States Constitution and article 1, section 11 of the Indiana Constitution, both of which serve to protect persons from unreasonable searches and seizures. *See Taylor v. State*, 842 N.E.2d 327 (Ind.2006). Because it is dispositive in this case, we need only address the issue on state constitutional grounds.

▮▮▮ Article 1, section 11 provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated." Automobiles are among the "effects" protected by article 1, section 11. *Taylor v. State*, 842 N.E.2d 327. "Although Section 11 appears to have been derived from the Fourth Amendment and shares very similar language, we interpret and apply it independently from Fourth Amendment jurisprudence." *Id.* at 334. The purpose of article 1, section 11 is to "protect from unreasonable police activity those areas of life that Hoosiers regard as private." *Id.* In determining whether the police behavior was reasonable under section 11, courts "must consider each case on its own facts and construe the constitutional provision liberally so as to guarantee the rights of people against unreasonable searches and seizures." *Id.* Further, we observe that a search warrant is generally a prerequisite to a constitutionally proper search and seizure. *Taylor v. State*, 842 N.E.2d 327.

▮▮▮ We evaluate the reasonableness of the police conduct under the totality of the evidence. *Masterson v. State*, 843

N.E.2d 1001 (Ind.Ct.App.2006), *trans. denied.* This requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search. *Myers v. State*, 839 N.E.2d 1146 (Ind.2005). Our Supreme Court has summarized the evaluation as follows:

> [A]lthough we recognize there may well be other relevant considerations under the circumstances, we have explained reasonableness of a search or seizure as turning on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.

*Litchfield v. State*, 824 N.E.2d 356, 361 (Ind.2005). "Rather than looking to federal requirements such as warrants and probable cause when evaluating Section 11 claims, we place the burden on the State to show that under the totality of the circumstances its intrusion was reasonable." *State v. Bulington*, 802 N.E.2d 435, 438 (Ind.2004).

▮▮▮ In the instant case, the State essentially argues that its actions were reasonable because Buckley was a prime suspect in a recent homicide. While we certainly understand the seriousness of the crime being investigated, such does not in and of itself constitute an exigent circumstance or any other exception to the warrant requirement. A review of the totality of the circumstances reveals that the police acted too hastily in seizing Buckley and Buckley's vehicle before any warrants had been issued.

The facts reveal that the murder occurred two days prior to the instant stop, providing ample time for the perpetrator to dispose of the murder weapon and oth-

er evidence of the crime. Once Buckley became a person of interest in the investigation, his residence was put under surveillance while Detective Rogers initiated procedures to obtain search warrants. Undercover officers promptly located Buckley's vehicle, which was parked conspicuously outside his residence with no indication Buckley was attempting to evade police.

When Buckley drove away from his residence on the morning in question, officers made a stop of his vehicle after observing several traffic infractions. While officers were able to verify that the driver was indeed Buckley, no evidence of the murder was gained from the initial stop. Up to this point, we agree that the officers acted well within their rights. The short detention until the detectives arrived on the scene may also be of little concern. The actions of the detectives upon their arrival ten to fifteen minutes after the stop, however, cannot be countenanced. Without probable cause for arrest, but simply because Buckley was a homicide suspect, the detectives had him exit his vehicle, patted him down, handcuffed him at some point, transported him to police headquarters, placed him in an interview room, and towed his car from the scene to a secure facility. Buckley was then detained in the interview room for several hours without being informed that he was free to go, while Detective Rogers secured search warrants.

This is not a case where a suspect voluntarily appeared at police headquarters in response to a request from investigators. Rather, Buckley was clearly seized in the constitutional sense when he was taken involuntarily to the police station and his car was towed. *See Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (in contrast to the brief and narrowly circumscribed intrusions involved in *Terry* stops, the detention of petitioner—a murder suspect—was in important respects indistinguishable from a traditional arrest when he was not questioned briefly where he was found but instead involuntarily taken by police to the police station, placed in an interrogation room, and never informed he was free to leave).

With respect to the first *Litchfield* factor, we agree with the State that police had reasonable suspicion at the time of the stop that Buckley was the perpetrator of a homicide, which occurred two days earlier. As discussed above, however, this is not sufficient to support the actions taken by the detective in this case.

Contrary to the State's arguments on appeal, the degree of intrusion on Buckley's ordinary activities was clearly substantial. Buckley was stopped on a public roadway, with up to eight officers responding to the scene. In broad daylight, he was then directed out of his vehicle, patted down, handcuffed, and taken by detectives to police headquarters while his vehicle was towed away. He was then detained for several hours in an interview room while Detective Rogers continued efforts to secure search warrants for Buckley's residence, vehicle, and clothing. We fail to see how this intrusion could be fairly categorized as "minimal." *Appellee's Brief* at 9.

Finally, in considering the extent of law enforcement needs, we observe that no shortage of time or other emergency existed. *See Masterson v. State*, 843 N.E.2d at 1007 (this factor "requires consideration of the nature and immediacy of the governmental concern"). The homicide occurred two days earlier, and police knew the location of their suspect, who in the two days since the shooting had made no apparent effort to flee or otherwise secrete himself or his vehicle. *Compare id.* (warrantless

search of parked get-away car was reasonable where "officers were pursuing a potentially armed and dangerous suspect who had just fled after robbing two women at knifepoint"), *with Brown v. State,* 653 N.E.2d 77 (Ind.1995) (warrantless search of unoccupied, parked vehicle was unreasonable where robbery occurred more than twenty-four hours earlier, the vehicle was surrounded by police and unlikely to be moved, and neither a shortage of time nor an emergency existed). Moreover, in those two days, the shooter had already had ample opportunity to dispose of evidence of the murder. Under the circumstances, the status quo would not have changed had police continued their undercover surveillance of Buckley until the search warrants were obtained later that morning or afternoon by Detective Rogers.

The State did not carry its burden under article 1, section 11 of the Indiana Constitution to establish the reasonableness of its actions. We, therefore, reverse Buckley's conviction and remand for further proceedings consistent with this opinion.

Judgment reversed and cause remanded.

ROBB, J., and MATHIAS, J., concur.