**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MARIELENA DUERRING**
Duerring Law Offices
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Nov 01 2012, 9:12 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DARRIUS WOODS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1202-CR-90 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable George W. Biddlecomb, Judge
Cause No. 20D03-0810-FA-50

**November 1, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Darrius Woods appeals his conviction for Class A felony dealing in cocaine.[1] Specifically, Woods contends that the trial court erred in admitting certain evidence at trial and that the evidence is insufficient to sustain his conviction. We affirm.

## FACTS AND PROCEDURAL HISTORY

At all times relevant to the instant appeal, the City of Elkhart ("City") had a noise ordinance which prohibited loud noises that could be heard from more than thirty-five feet away. At approximately 6:00 p.m. on October 10, 2008, Corporal Michael Bogart of the Elkhart City Police Department was parked in his marked police vehicle in the parking lot of a local establishment near the intersection of Main and Prairie Streets. Corporal Bogart was in the area observing traffic in response to multiple complaints about violations of the City's noise ordinance. Corporal Bogart, whose vehicle was parked approximately fifty to sixty feet from the intersection, heard loud, thumping music that was loud enough to violate the City's noise ordinance and determined that the music was coming from a blue Oldsmobile station wagon that was travelling northbound on Main Street.

After determining that the noise was coming from the blue Oldsmobile station wagon, Corporal Bogart pulled out of the parking lot directly behind the station wagon, turned on his police lights, and gave a short burst of his siren. Corporal Bogart followed the station wagon for approximately two blocks before the driver of the station wagon pulled over and stopped. While following the station wagon, Corporal Bogart observed the driver of the station wagon "raising up in his seat and reaching up and underneath him" as if the driver was attempting to

---

[1] Ind. Code §§ 35-48-4-1(a)(2)(C); -1(b)(1) (2008).

2

retrieve or conceal something. Tr. p. 182. At this point, Corporal Bogart became concerned for his safety because, in light of his training and experience as a police officer, he knew that individuals often attempt to conceal weapons and drugs during traffic stops.

After the driver of the station wagon pulled into the parking lot of a restaurant and stopped, Corporal Bogart approached the driver's side of the station wagon and recognized the driver as Woods. Corporal Bogart explained the reason for the stop to Woods, *i.e.*, a violation of the City's noise ordinance, and requested Woods's driver's license and registration. Corporal Bogart provided Woods's name and license registration to dispatch for the purpose of checking the status of Woods's driver's license and determining whether there were any active warrants for Woods's arrest. In light of the suspicious movements that Corporal Bogart observed while following Woods, which again, made Corporal concerned for his safety, Corporal Bogart asked Woods to exit the vehicle while waiting for dispatch to verify Woods's information.

As Woods was stepping out of the station wagon, dispatch radioed Corporal Bogart and informed him that there were four potential local warrants for Woods's arrest. Corporal Bogart then conducted an outer clothing pat down of Woods's person, during which he felt an object in Woods's right pant leg "that, obviously, was not part of his anatomy." Tr. p. 187. Corporal Bogart was able to move the item "down from – from the outside of his clothes, [it] moved out and just fell to the ground." Tr. p. 190. Corporal Bogart observed that the item that fell from Woods's pant leg was a clear plastic bag containing an off-white, rock-like substance which, based on his training and experience, he recognized as crack

3

cocaine. Corporal Bogart also discovered approximately $322 or $332 in cash in Woods's pant pocket. Dispatch subsequently confirmed that there were four active local warrants for Woods's arrest. Woods was placed under arrest for the possession of cocaine and also because of the four local warrants. Corporal Bogart subsequently tested the off-white rock-like substance and discovered that it was in fact crack cocaine.

On October 15, 2008, the State charged Woods with Class A felony dealing in cocaine. On April 27, 2010, Woods filed a motion to suppress the evidence obtained as a result of the traffic stop. The trial court conducted a hearing on Woods's motion to suppress on August 5, 2010 and September 2, 2010, after which it denied Woods's motion. At trial, Woods again objected to the admission of the evidence obtained as a result of the traffic stop, reiterating the reasons presented in his motion to suppress. The evidence was admitted over Woods's objection. At the conclusion of trial, the jury found Woods guilty as charged. On February 22, 2012, the trial court sentenced Woods to forty years in the Department of Correction. The trial court further ordered that Woods's sentence in the instant matter be served consecutive to the sentence imposed under an unrelated cause number. This appeal follows.

## DISCUSSION AND DECISION

### I. Admission of Evidence

Woods contends that the trial court erred in denying his motion to suppress the evidence obtained during the traffic stop. Although Woods originally challenged the admission of the evidence through a motion to suppress, he appeals following a completed

4

trial and thus challenges the admission of the evidence at trial. "Accordingly, 'the issue is more appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial.'" *Cole v. State*, 878 N.E.2d 882, 885 (Ind. Ct. App. 2007) (quoting *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003)).

> Our standard of review for rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by an objection at trial. *Ackerman v. State*, 774 N.E.2d 970, 974-75 (Ind. Ct. App. 2002), *reh'g denied*, *trans. denied*. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Collins v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*. We also consider uncontroverted evidence in the defendant's favor. *Id.*

*Id.*

A trial court has broad discretion in ruling on the admissibility of evidence. *Washington*, 784 N.E.2d at 587 (citing *Bradshaw v. State*, 759 N.E.2d 271, 273 (Ind. Ct. App. 2001)). Accordingly, we will reverse a trial court's ruling on the admissibility of evidence only when the trial court abused its discretion. *Id.* (citing *Bradshaw*, 759 N.E.2d at 273). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.* (citing *Huffines v. State*, 739 N.E.2d 1093, 1095 (Ind. Ct. App. 2000)).

Woods argues that the trial court abused its discretion in admitting the evidence stemming from the traffic stop because the evidence was discovered in violation of his constitutional rights under both Article I, Section 11 of the Indiana Constitution and the Fourth Amendment to the United States Constitution. In raising these constitutional

5

challenges, Woods challenges the legality of both the traffic stop and the subsequent warrantless search of his person.

## A. Article I, Section 11

With respect to Article I, Section 11, Woods contends that the evidence discovered during the traffic stop should have been excluded from trial because the evidence is the fruit of an illegal traffic stop.

> Article I, Section 11 provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated...." The purpose of this article is to protect from unreasonable police activity those areas of life that Hoosiers regard as private. *Moran v. State*, 644 N.E.2d 536, 540 (Ind. 1994). The provision must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure. *Brown v. State*, 653 N.E.2d 77, 79 (Ind. 1995). In resolving challenges asserting a Section 11 violation, courts must consider the circumstances presented in each case to determine "whether the police behavior was reasonable." *Id.* We place the burden on the State to show that under the totality of the circumstances its intrusion was reasonable. *State v. Bulington*, 802 N.E.2d 435, 438 (Ind. 2004).

*State v. Quirk*, 842 N.E.2d 334, 339-40 (Ind. 2006). Thus, we are called upon to determine whether the traffic stop was reasonable under the totality of the circumstances. *See id.* at 340.

Woods argues that "the pretextual stop facilitated by a mere ordinance violation 'of questionable validity' was not reasonable in light of the circumstances and violated Woods [sic] rights under Article I, Section 11 of the Indiana Constitution." Appellant's Br. p. 7 (emphasis omitted). In support, Woods relies on *Turner v. State*, 862 N.E.2d 695 (Ind. Ct. App. 2007), in which a panel of this court concluded that the trial court abused its discretion

6

in admitting evidence recovered as a result of a traffic stop because the stated reason for the stop, *i.e.*, speeding, was pretextual and unreasonable under the circumstances. In making this conclusion, the Court stated that although the officer estimated Turner's speed at fifty-five miles per hour, the officer did not know the speed limit in the area where he stopped Turner. *Id*. at 70. *Turner*, however, can be easily distinguished from the instant matter.

In Indiana, it is well-settled that "[a] police stop and brief detention of a motorist is reasonable and permitted under [Article I,] Section 11 if the officer reasonably suspects that the motorist engaged in, or [is] about to engage in, illegal activity." *Quirk*, 842 N.E.2d at 340 (citing *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001)).

> A stop is lawful if there is an objectively justifiable reason for it, and the stop may be justified on less than probable cause. [*Jackson v. State*, 785 N.E.2d 615, 619 (Ind. Ct. App. 2003), *trans. denied*.] If there is an objectively justifiable reason, then the stop is valid whether or not the police officer would have otherwise made the stop but for ulterior suspicions or motives. *Id.*

*Turner*, 862 N.E.2d at 699-700.

Here, unlike in *Turner*, Corporal Bogart had an objectively justifiable reason for stopping Woods's vehicle. Corporal Bogart had specific knowledge of the City's noise ordinance and could readily identify violations of said noise ordinance. Corporal Bogart testified that individuals violating the City's noise ordinance could be given a citation and fine. Under the circumstances surrounding the stop of Woods's vehicle, Corporal Bogart both heard the violation and determined the source of the violation before initiating the traffic stop. Because Corporal Bogart had a justifiable reason for stopping Woods's vehicle, we conclude that the traffic stop was valid and did not violate Woods's rights under Article I,

7

Section 11.

## B. The Fourth Amendment

Woods also argues that the trial court abused its discretion because the traffic stop and subsequent pat down search were conducted in violation of the Fourth Amendment. The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches or seizures shall not be violated." The Fourth Amendment prohibits unreasonable searches and seizures. *Burkes v. State*, 842 N.E.2d 426, 429 (Ind. Ct. App. 2006), *trans. denied*.

> The Fourth Amendment regulates nonconsensual encounters between citizens and law enforcement officials and does not deal with situations in which a person voluntarily interacts with a police officer. A full-blown arrest or a detention that lasts for more than a short period of time must be justified by probable cause. A brief investigative stop may be justified by reasonable suspicion that the person detained is involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 31, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

*Finger v. State*, 799 N.E.2d 528, 532 (Ind. 2003). A police officer may stop and briefly detain a person for investigative purposes under *Terry* so long as the officer has a reasonable suspicion, supported by articulable facts, that criminal activity may be afoot. *Bratcher v. State*, 661 N.E.2d 828, 830 (Ind. Ct. App. 1996) (citing *Terry*, 392 U.S. 1).

## 1. Legality of Traffic Stop[2]

"Because a traffic stop is a seizure under the Fourth Amendment, police may not

---

[2] Although Woods does not make arguments regarding the legality of the traffic stop under the Fourth Amendment separate from those relating to his state constitutional claim, Woods does make a general assertion that the allegedly illegal traffic stop violated both his state and federal constitutional rights. As such, we will review the legality of the traffic stop under the Fourth Amendment.

8

initiate a stop for any conceivable reason, but must possess at least reasonable suspicion that a traffic law has been violated or that other criminal activity is taking place." *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009). Reasonable suspicion exists where the facts known to the officer at the moment of the stop, together with the reasonable inferences arising therefrom, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. *Burkes*, 842 N.E.2d at 429-30. In deciding whether there was reasonable suspicion for a stop, we look to the totality of the circumstances of a given case. *Id*. at 430. "An officer's decision to stop a vehicle is valid so long as his on-the-spot evaluation reasonably suggests that lawbreaking occurred." *Meredith*, 906 N.E.2d at 870.

In the instant matter, the record demonstrates that at the time of the stop, Corporal Bogart had reasonable suspicion to believe that Woods was violating the City's noise ordinance. Corporal Bogart had specific knowledge of the City's noise ordinance and could readily identify violations of said noise ordinance. Under the circumstances surrounding the traffic stop, Corporal Bogart both heard the violation and determined the source of the violation before initiating the traffic stop. As such, we conclude that the traffic stop was valid and did not violate Woods's rights under the Fourth Amendment because Corporal Bogart's on-the-spot evaluation reasonably suggested that Woods was violating the City's noise ordinance. *See id*.

## 2. Legality of Search[3]

---

[3] Woods does not make a separate claim that the pat-down search was an unlawful search that violated his rights under Article I, Section 11. As such, we will analyze Woods's claim relating to the pat down search under only the Fourth Amendment.

9

Having concluded that the initial traffic stop was proper, we must consider whether the subsequent pat down search was permissible.

> A judicially issued search warrant is a condition precedent to a lawful search. "Searches conducted outside the judicial process are per se unreasonable unless subject to a few well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). The state has the burden of demonstrating the existence of one of these exceptions. One such exception to the warrant requirement is: when a police officer makes a *Terry* stop, if he has reasonable fear of danger, he may conduct a carefully limited search of the outer clothing of the suspect in an attempt to discover weapons that might be used to harm him. *Shinault v. State*, 668 N.E.2d 274, 277 (Ind. Ct. App. 1996). An officer's authority to conduct a pat down search is dependent upon the nature and extent of his particularized concern for his safety. *Wilson v. State*, 745 N.E.2d 789, 792 (Ind. 2001).

*Williams v. State*, 754 N.E.2d 584, 587-88 (Ind. Ct. App. 2001). In conducting a *Terry* search, the officer need not be absolutely certain that an individual was armed but only that a reasonably prudent man in the same circumstances would be warranted in believing that his safety or that of others was in danger. *Bratcher*, 661 N.E.2d at 831 (citing *Terry*, 392 U.S. at 27).

Here, Corporal Bogart testified that he conducted a limited pat down search of Woods's outer clothing because he feared that Woods could be armed.[4] After Corporal Bogart initiated the traffic stop by pulling out behind Woods and initiating his police lights and siren, Woods continued to drive for approximately two blocks before stopping. During this time, Corporal Bogart, who was traveling in the vehicle immediately behind the vehicle

---

[4] Woods argues on appeal that Corporal Bogart's search was not just of his outer clothing, but that Corporal Bogart reached into his pant pocket. The record demonstrates, however, that Corporal Bogart's initial search was only of Woods's outer clothing and that he did not reach into Woods's pocket until after Woods gave him permission to do so.

driven by Woods, observed Woods make furtive movements which, based on his experience as a police officer, he knew to be consistent with an attempt to conceal contraband, often a weapon. Woods's movements prior to stopping were such that Corporal Bogart felt it necessary to call for back up assistance due to his officer safety concerns. Corporal Bogart testified that he requested that Woods exit the vehicle and conducted the outer clothing pat down search in order to determine whether Woods was armed. We conclude that Wood's movement of "raising up in his seat and reaching up and underneath him" as if trying to conceal something warranted Corporal Bogart's reasonable fear for his safety and the subsequent pat down search.

Moreover, to the extent that Woods argues that the seizure of the cocaine was illegal because Corporal Bogart could not have believed the contraband concealed in his pant leg to be a weapon, we note that a police officer may seize contraband if, during a lawful pat down of a suspect's clothing, he feels an object whose contour or mass makes its identity immediately apparent. *Williams*, 754 N.E.2d at 588. Here, during the pat down of Woods's outer clothing, Corporal Bogart felt an object in Wood's right pant leg "that, obviously, was not part of his anatomy." Tr. p. 187. The contour or the mass of the cocaine made its identity immediately apparent to Corporal Bogart, and, as a result, Corporal Bogart could seize the contraband. *Williams*, 754 N.E.2d 588.

Furthermore, even if Woods movements were insufficient to justify a search because of officer safety concerns, the admission of the cocaine discovered during the pat down search would be proper if it was inevitable that the cocaine would be discovered. "The

11

inevitable discovery exception to the exclusionary rule permits the introduction of evidence that eventually would have been located had there been no error." *Shultz v. State*, 742 N.E.2d 961, 965 (Ind. Ct. App. 2011) (internal quotations omitted). "For that instance, there is no nexus sufficient to provide a taint." *Id*. (internal quotations omitted). "Thus, if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means …then … the evidence should be received." *Banks v. State*, 681 N.E.2d 235, 240 (Ind. Ct. App. 1997) (internal quotation omitted). "Anything less would reject logic, experience, and common sense." *Id*. (internal quotation omitted).

Here, the record demonstrates that there were four active local warrants for Woods's arrest. Woods was ultimately arrested on these warrants in addition to his possession of the cocaine found during the pat down search. A more thorough inventory search of Woods was subsequently conducted following his arrest. As such, we believe that it is inevitable that officers would have found the cocaine during the search of Woods conducted following his arrest on the active warrants. *See generally Wilson v. State*, 754 N.E.2d 950, 956 (Ind. Ct. App. 2001) (providing that one recognized exception to the warrant requirement is a search conducted incident to a lawful arrest). Any evidence discovered during the search incident to Woods's arrest is admissible at trial. *Id*. (providing that evidence resulting from a search incident to a lawful arrest is admissible at trial). Accordingly, the trial court acted within its discretion in admitting the cocaine found during the pat down search because it was inevitable that the cocaine would have been discovered during the search incident to Woods's

12

arrest on the four active, local warrants. *See generally Shultz*, 742 N.E.2d at 965.

## II. Sufficiency of the Evidence

Woods also contends that the evidence is insufficient to sustain his conviction for

Class A felony dealing in cocaine.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction.… The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations

omitted). "In essence, we assess only whether the verdict *could* be reached based on

reasonable inference that may be drawn from the evidence presented." *Baker v. State*, 968

N.E.2d 227, 229 (Ind. 2012). Upon review, appellate courts do not reweigh the evidence or

assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

Inconsistencies in witness testimony go to the weight and credibility of the testimony, "the

resolution of which is within the province of the trier of fact." *Jordan v. State*, 656 N.E.2d

816, 818 (Ind. 1995).

Indiana Code section 35-48-4-1(a)(2)(C) provides that "[a] person who … possesses,

with intent to … deliver … cocaine … commits dealing in cocaine." Indiana Code section

35-48-4-1(b)(1) further provides that "[t]he offense is a Class A felony if: (1) the amount of

the drug involved weighs three (3) grams or more." Thus in order to prove that Woods

committed Class A felony dealing in cocaine, the State was required to prove that Woods

13

possessed more than three grams of cocaine with the intent to deliever.

In the instant matter, Woods acknowledges that the evidence is sufficient to prove that he possessed 5.03 grams of cocaine. Woods, however, argues that the State failed to prove that he possessed the cocaine with the intent to deliver. In making this argument, Woods asserts that the cocaine was packaged in one single "baggy," that "[t]here was no packaging material found either on Woods, or in his vehicle[,]" and that "[t]here were no ledgers, scales or other items commonly found in the vicinity of a drug dealer found either in the car, or on Woods himself." Appellant's Br. p. 13. Woods also asserts that he had been kicked out of his parents' home because of his drug use and had provided an explanation for the cash found on his person that was unrelated to the cocaine found in his pant leg. Thus, Woods claims that the State failed to prove that he intended to deliver the cocaine because his possession of the 5.03 grams of cocaine is consistent with personal use.

> Circumstantial evidence showing possession with intent to deliver may support a conviction. Possessing a large amount of a narcotic substance is circumstantial evidence of intent to deliver. The more narcotics a person possesses, the stronger the inference that he intended to deliver it and not consume it personally. *Love v. State*, 741 N.E.2d 789, 792 (Ind. Ct. App. 2001) *quoting Berry v. State*, 574 N.E.2d 960, 963 (Ind. Ct. App. 1991) (citations omitted), *trans. denied*.

*Davis v. State*, 791 N.E.2d 266, 270 (Ind. Ct. App. 2003).

Here, the record demonstrates that Woods possessed approximately 5.03 grams of cocaine and over $300 in cash. The cocaine was packaged in the corner of a single plastic baggie. Office David Clendenen of the Goshen City Police Department and the Elkhart County Interdiction Covert Enforcement Unit ("ICE Unit") testified that the "typical does of

14

crack cocaine, that you buy on the street, at the street level, is what [is] call[ed] as "20-rock" is … about 0.2 grams" and cost approximately "twenty bucks." Tr. pp. 264, 267. Officer Clendenen testified that in his experience as a drug interdiction officer, 5.03 grams of cocaine is more consistent with an amount that would be possessed by a drug dealer rather than a typical drug user, that possession of any amount of cocaine "over, roughly, three or four grams, is a significant amount[,]" and that drug users do not typically buy cocaine in bulk. Tr. p. 265. Officer Clendenen further testified that, again in his experience as a drug interdiction officer, drug users typically have paraphernalia used to ingest the cocaine on their persons, but that drug dealers typically do not.

In *Davis*, this court concluded that the possession of 5.6225 grams of cocaine was consistent with the amount possessed by a dealer, rather than for strictly personal use. *Id*. Here, Woods possessed an amount similar to that possessed by the defendant in *Davis*. As such, we conclude that the possession of 5.03 grams of cocaine is circumstantial evidence of the intent to deliver sufficient to support an inference that Woods intended to deliver the cocaine rather than use it person consumption. *See id*. We further conclude that this evidence, when considered with the fact that Woods did not possess any paraphernalia by which he could ingest the cocaine at the time of his arrest, coupled with Officer Clendenen's testimony that 5.03 grams is a significant amount of cocaine and a dealer would not typically possess any paraphernalia, is sufficient to support the inference that Woods possessed the cocaine with the intent to deliver. Woods claim to the contrary effectively amounts to an invitation to reweigh the evidence, which, again, we will not do. *See Stewart*, 768 N.E.2d at

15

435.

The judgment of the trial court is affirmed.

ROBB, C.J., and BAKER, J., concur.