BRADFORD, Judge,
concurring in part and dissenting in part.
I agree with the majority that the stop conducted by Officer Smith implicated the constitutional protections provided by the Fourth Amendment and Article I, Section 11. However, I do not believe that either the stop or the subsequent search violated those constitutional protections. As such, I concur in part and respectfully dissent in part.
I. Admission of Evidence
Clanton contends that the trial court abused its discretion in admitting the evidence stemming from the allegedly unconstitutional stop and search of his person.
Our standard of review for rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by an objection at trial. Ackerman v. State, 774 N.E.2d 970, 974-75 (Ind.Ct.App.2002), reh’g denied, trans. denied. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court’s ruling. Collins *1027 v. State, 822 N.E.2d 214, 218 (Ind.Ct.App.2005), trans. denied. We also consider uncontroverted evidence in the defendant’s favor. Id.
Cole v. State, 878 N.E.2d 882, 885 (Ind.Ct.App.2007).
A trial court has broad discretion in ruling on the admissibility of evidence. Washington v. State, 784 N.E.2d 584, 587 (Ind.Ct.App.2003) (citing Bradshaw v. State, 759 N.E.2d 271, 273 (Ind.Ct.App.2001)). Accordingly, we will reverse a trial court’s ruling on the admissibility of evidence only when the trial court abused its discretion. Id. (citing Bradshaw, 759 N.E.2d at 273). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. Id. (citing Huffines v. State, 739 N.E.2d 1093, 1095 (Ind.Ct.App.2000)).
Clanton argues that the trial court abused its discretion in admitting the evidence stemming from the stop because the evidence was discovered in violation of his constitutional rights under both the Fourth Amendment and Article I, Section 11. In raising these claims, Clanton challenges the legality of both the stop and the subsequent warrantless search of his person.
A. The Fourth Amendment
The Fourth Amendment provides “[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches or seizures shall not be violated.” The Fourth Amendment prohibits unreasonable searches and seizures. Burkes v. State, 842 N.E.2d 426, 429 (Ind.Ct.App.2006), trans. denied.
The Fourth Amendment regulates non-consensual encounters between citizens and law enforcement officials and does not deal with situations in which a person voluntarily interacts with a police officer. A full-blown arrest or a detention that lasts for more than a short period of time must be justified by probable cause. A brief investigative stop may be justified by reasonable suspicion that the person detained is involved in criminal activity. Terry v. Ohio, 392 U.S. 1, 31, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
Finger v. State, 799 N.E.2d 528, 532 (Ind.2003). A police officer may stop and briefly detain a person for investigative purposes under Terry so long as the officer has a reasonable suspicion, supported by articulable facts, that criminal activity may be afoot. Bratcher v. State, 661 N.E.2d 828, 830 (Ind.Ct.App.1996) (citing Terry, 392 U.S. 1, 88 S.Ct.1868).
1. Legality of the Stop
Because stopping an individual and limiting his freedom to leave is a seizure under the Fourth Amendment, “police may not initiate a stop for any conceivable reason, but must possess at least reasonable suspicion that a traffic law has been violated or that other criminal activity is taking place.” Meredith v. State, 906 N.E.2d 867, 869 (Ind.2009). Reasonable suspicion exists where the facts known to the officer at the moment of the stop, together with the reasonable inferences arising therefrom, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. Burkes, 842 N.E.2d at 429-30. In deciding whether there was reasonable suspicion for a stop, we look to the totality of the circumstances of a given case. Id. at 430.
In the instant matter, the record demonstrates that at the time of the stop, Officer Price had reasonable suspicion to believe that Clanton was engaging in criminal activity. Officer Price was working security for the apartment complex located in a high crime area when he saw Clanton and two other men standing outside an apart *1028 ment door in violation of the apartment complex’s “no loitering” policy. See Ross v. State, 844 N.E.2d 537, 542 (Ind.Ct.App.2006) (providing that presence in a high crime area is a factor that can be considered at the time of the stop); see also Parker v. State, 662 N.E.2d 994, 999 (Ind.Ct.App.1996) (providing that officer had reasonable suspicion to stop and pat-down individual because officer knew that the area was known for frequent drug activity, and that firearms were frequently present in drug transactions). Officer Price was familiar with the apartment complex’s “no loitering” policy, and he testified that the sole purpose of his presence at the apartment complex was to enforce the “no loitering” policy. The record does not contain any evidence suggesting that Clayton and the other men had a valid purpose for standing outside the apartment door.
As Officer Price and another officer approached the three men, the men turned their backs on the officers and one man fled the scene. The flight by one of the three men raised Officer Price’s suspicion that the men, who were loitering at 11:15 p.m. in an area known to have high levels of crime and drug activity, were engaged in criminal activity. See Platt v. State, 589 N.E.2d 222, 226 (Ind.1992) (providing that flight at the sight of police is undeniably suspicious behavior). In addition, the other officer’s act of following the fleeing man left Officer Price outnumbered by two unknown individuals. Officer Price witnessed a violation of the “no loitering” policy and the flight by one of the individuals standing with Clanton before initiating the stop. As such, I would conclude that the stop was valid and did not violate Clanton’s rights under the Fourth Amendment. See Burkes, 842 N.E.2d at 430.
2. Legality of Search
Having concluded that the initial stop did not violate Clanton’s Fourth Amendment rights, we must consider whether the subsequent search of his person was permissible.
A judicially issued search warrant is a condition precedent to a lawful search. “Searches conducted outside the judicial process are per se unreasonable unless subject to a few well delineated exceptions.” Minnesota v. Dickerson, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). The state has the burden of demonstrating the existence of one of these exceptions. One such exception to the warrant requirement is: when a police officer makes a Terry stop, if he has reasonable fear of danger, ■he may conduct a carefully limited search of the outer clothing of the suspect in an attempt to discover weapons that might be used to harm him. Shinault v. State, 668 N.E.2d 274, 277 (Ind.Ct.App.1996). An officer’s authority to conduct a pat down search is dependent upon the nature and extent of his particularized concern for his safety. Wilson v. State, 745 N.E.2d 789, 792 (Ind.2001).
Williams v. State, 754 N.E.2d 584, 587-88 (Ind.Ct.App.2001). In conducting a Terry search, the officer need not be absolutely certain that an individual is armed but only that a reasonably prudent man in the same circumstances would be warranted in believing that his safety or that of others was in danger. Bratcher, 661 N.E.2d at 831 (citing Terry, 392 U.S. at 27, 88 S.Ct. 1868).
Here, Officer Price testified that he conducted a limited pat-down search of Clan-ton’s outer clothing because he feared that Clanton could be armed. Again, Officer Price and another officer encountered three men loitering outside an apartment door at 11:15 p.m. in an area known to be an area with high crime and drug activity. As the officers approached, the three men turned their backs on the officers and one *1029 man fled. Officer Price was out-numbered by two unidentified individuals after the other officer followed the fleeing man. See Commonwealth v. Mack, 953 A.2d 587, 591 (Pa.Super.Ct.2008) (providing that the fact that an officer may be outnumbered is certainly a factor to be considered when determining whether an officer’s safety is at risk). The flight by the third man raised Officer Price’s suspicion that the three men might be armed or engaged in criminal activity. Officer Price testified that in light of Clanton’s act of loitering in a high crime area at 11:15 p.m., Officer Price felt it necessary to conduct the outer clothing pat-down search in order to determine whether Clanton was armed. In light of the above-stated circumstances, I would conclude that Officer Price had a reasonable fear for his safety that warranted the pat-down search.
Moreover, I do not agree that Officer Price exceeded the scope of the initial search by pulling the plastic out of the pen cap, revealing the cocaine. The record demonstrates that during the outer-clothing pat-down search, Officer Price felt a sharp object in Clanton’s pocket. Believing that the sharp object could potentially be used as a weapon, Officer Price removed the object from Clanton’s pocket, identified it as a pen cap, and immediately saw plastic sticking out of the pen cap. The plastic that was stuffed into the pen cap was immediately apparent to Officer Price. Furthermore, although it was not immediately apparent what specific drug was stored in the plastic bag in the pen cap, Officer Price testified that in his experience as a police officer, he was aware that individuals often store drugs in plastic bags stuffed in pen caps. As such, I would conclude that Officer Price did not exceed the scope of the original pat-down search by removing the plastic from the pen cap and seizing the cocaine contained within. See Williams, 754 N.E.2d at 588 (providing that a police officer may seize contraband if, during a lawful pat down of a suspect’s clothing, he feels an object whose contour or mass makes its identity immediately apparent).
B. Article I, Section 11
With respect to Article I, Section 11, Clanton again argues that the evidence discovered during search of his person should have been excluded from trial because the evidence is the fruit of an illegal stop and warrantless search of his person.
Article I, Section 11 provides, “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated.... ” The purpose of this article is to protect from unreasonable police activity those areas of life that Hoosiers regard as private. Moran v. State, 644 N.E.2d 536, 540 (Ind.1994). The provision must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure. Brown v. State, 653 N.E.2d 77, 79 (Ind.1995). In resolving challenges asserting a Section 11 violation, courts must consider the circumstances presented in each case to deter-inine “whether the police behavior was reasonable.” Id. We place the burden on the State to show that under the totality of the circumstances its intrusion was reasonable. State v. Bulington, 802 N.E.2d 435, 438 (Ind.2004).
State v. Quirk, 842 N.E.2d 334, 339-40 (Ind.2006). Thus, we are called upon to determine whether the stop and subsequent pat down search were reasonable under the totality of the circumstances. See id. at 340.
1. Legality of the Stop
In Indiana, it is well-settled that a police stop and brief detention of an individual is *1030 reasonable and permitted under Article I, Section 11 if the officer reasonably suspects that the individual engaged in, or is about to engage in, illegal activity. See Quirk, 842 N.E.2d at 340 (citing Mitchell v. State, 745 N.E.2d 775, 786 (Ind.2001)).
A stop is lawful if there is an objectively justifiable reason for it, and the stop may be justified on less than probable cause. [Jackson v. State, 785 N.E.2d 615, 619 (Ind.Ct.App.2003), trans. denied.] If there is an objectively justifiable reason, then the stop is valid whether or not the police officer would have otherwise made the stop but for ulterior suspicions or motives. Id.
Turner v. State, 862 N.E.2d 695, 699-700 (Ind.Ct.App.2007).
For the reasons discussed above, I believe that Officer Price had an objectively justifiable reason for stopping Clanton. Officer Price had specific knowledge of the apartment complex’s “no loitering” policy, and he testified that the sole reason for his presence at the apartment complex was to enforce that policy. Officer Price and another officer observed Clanton and two other men violating the policy by loitering outside an apartment door in an area known to have a high level of crime and drug activity. See Ross, 844 N.E.2d at 542 (providing that presence in a high crime area is a factor that can be considered at the time of the stop); see also Parker, 662 N.E.2d at 999 (providing that officer had reasonable suspicion to stop and pat-down individual because officer knew that the area was known for frequent drug activity, and that firearms were frequently present in drug transactions). Nothing in the record indicated that the men had a valid purpose for standing outside the apartment door. As Officer Price and the other officer approached the three men, the men turned their backs on the officers and one man fled the scene, leaving Officer Price outnumbered by the two unknown men. Again, the flight by one of the men raised Officer Price’s suspicion that the men were engaged in criminal activity. See Platt, 589 N.E.2d at 226 (providing that flight at the sight of police is undeniably suspicious behavior). Because I believe that these circumstances give Officer Price a justifiable reason for stopping Clanton, I would conclude that the stop was valid and did not violate Clanton’s rights under Article I, Section 11.
2. Legality of the Search
“While almost identical to the wording in the search and seizure clause of the federal constitution, Indiana’s search and seizure clause is independently interpreted and applied.” Baniaga v. State, 891 N.E.2d 615, 618 (Ind.Ct.App.2008). Under the Indiana Constitution, the legality of a governmental search turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. Litchfield v. State, 824 N.E.2d 356, 359 (Ind.2005). Although other relevant considerations under the circumstances may exist, our Supreme Court has determined that the reasonableness of a search or seizure turns on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizens’ ordinary activities, and 3) the extent of law enforcement needs. Baniaga, 891 N.E.2d at 618. The burden is on the State to show that under the totality of the circumstances, the intrusion was reasonable. Id.
Edmond v. State, 951 N.E.2d 585, 592 (Ind.Ct.App.2011) (quoting Hathaway v. State, 906 N.E.2d 941, 945 (Ind.Ct.App. 2009), trans. denied).
In the instant matter, I believe that the circumstances demonstrate that the search *1031 was reasonable under the totality of the circumstances. As is stated above, Officer Price conducted the search of Clanton’s outer clothing because he was concerned that Clanton might be armed. Officer Price was working as a security officer at an apartment complex when he encountered Clanton and two other unknown men at approximated 11:15 p.m. The apartment complex was located in an area that was known to Officer Price to have high levels of criminal and drug activity.
The men, who were loitering at the apartment complex, turned their backs on Officer Price and the other officer when they first approached. One of the men subsequently fled and was followed by the other officer, leaving Officer Price with two unknown individuals. See Mack, 953 A.2d at 591 (providing that the fact that an officer may be outnumbered is certainly a factor to be considered when determining whether an officer’s safety is at risk). The flight of one of the men loitering with Clanton raised Officer Price’s suspicion that the men were engaged in criminal behavior. In light of these circumstances, I would conclude that Officer Price’s decision to search Clanton to determine whether Clanton was armed was reasonable.
Moreover, again for the reasons stated above, I do not believe that Officer Price exceeded the scope of a warrantless search by pulling the plastic bag out of the pen cap. During the search, Officer Price felt a sharp object in Clanton’s pocket. Officer Price removed the object from Clanton’s pocket and discovered that it was a pen cap. It was immediately apparent to Officer Price that plastic was stuck up in the pen cap, and, in his experience as a police officer, he knew that drug users commonly stored their drugs in this fashion. The fact that Officer Price did not know exactly which drug was stored in the plastic does not, in my view, render his removal of the plastic and subsequent seizure of the drugs found within unreasonable. Accordingly, I would affirm the judgment of the trial court.